Points decided.

[No. 1199.]

J. W. BOYNTON, APPELLANT, v. A. A. LONGLEY, RESPONDENT.

FLOW OF WATER — RIGHTS OF UPPER AND LOWER LAND-OWNERS — EASEMENT — SERVITUDE — DAMAGES. — The prevailing doctrine, as to the flow of water caused by rain, snow, or natural drainage, is, that when two tracts of land are adjacent, and one is lower than the other, the owner of the upper tract has an easement in the lower land to the extent of the water naturally flowing from the upper land to and upon the lower tract, and that any damage that may be occasioned to the lower land thereby is *damnum absque injuria.*

IDEM — WHERE FLOW IS CAUSED BY ACT OF MAN. — The rule above stated only applies to waters which flow naturally from the causes stated. Courts have generally declared that the servitude of the lower land cannot be augmented or made more burdensome by the acts or industry of man.

IDEM — RIGHTS OF FARMERS — ARTIFICIAL IRRIGATION. — Where both the upper and lower land-owners are farmers, engaged in the ordinary cultivation of their respective lands by artificial irrigation: *Held,* that the law should not be so construed as to deny or materially abridge the rights of either party to prosecute their agricultural pursuits, or deprive them of any of the incidents necessary to cultivate and improve their lands.

IDEM — *Sic utere tuo ut alienum non lædas.* The upper land-owner, while having the right to make a reasonable use of the water for irrigation, must so use, manage, and control it as not to injure his neighbor's land. He should not be permitted to make his estate more valuable by an act which renders the estate of the owner of the lower lands less valuable.

PRESCRIPTIVE RIGHTS — INCREASE OF FLOW OF WATER. — A mere acquiescence or permission on the part of the lower land-owner, to allow the flow of the waste or surplus water in such limited quantity as did his land no injury, cannot be so construed as to give the upper land-owner a prescriptive right to increase the flow to such an extent as to damage the lands of the lower land-owner.

IDEM — EXTENT OF RIGHTS — TIME WITHIN WHICH RIGHT ATTACHES. — The right acquired by prescription is only commensurate with the right enjoyed. The extent of the enjoyment measures the extent of the right. The right gained by prescription is always confined to the right as exercised for the full period of time required by the statute, which in this state is five years.

IDEM — ENLARGEMENT OF USE — SERVITUDE — INVASION OF RIGHTS. — A party claiming a prescriptive right for five years who, within that time, enlarges the use, cannot at the end of that time claim the use as enlarged within that period. The acts by which the right is sought to be established must be such as to operate as an invasion of the right claimed to such an extent that during the whole period of use the party whose estate is sought to be charged with the servitude could have maintained an action therefor.

ASSIGNMENT OF ERRORS. — No errors, except such as are embraced in the assignment of errors, will be considered by this court.

APPEAL from the District Court of the Seventh Judicial District, Washoe County.

The facts are sufficiently stated in the opinion.

*Clarke & King*, for Appellant.

I. Irrigation in this state is a necessity to the cultivation of the soil, and therefore a right incident to the ownership and cultivation of land. If the owner of the land has the right to cultivate it, he has the right to do that which is indispensable to irrigation, to wit, irrigate. (*Barnes* v. *Sabron*, 10 Nev. 243; *Union M. & M. Co.* v. *Ferris*, 2 Saw. 191.)

II. Every man has the right to beneficially use his own, and if in such use another is damaged, the law affords no remedy. To give a remedy in such case would destroy the right. (Broom's Leg. Max. 195; Field on Dam. 36, 37, sec. 40.)

III. It is both the law of nature and society that the lower land owes a servitude to the upper to receive the water which falls or flows by natural causes and natural channels upon it. (*Martin* v. *Riddle*, 26 Pa. St. 415; *Butler* v. *Peck*, 16 Ohio St. 334;[1] *Laumier* v. *Francis*, 23 Mo. 181; *Beard* v. *Murphy*, 37 Vt. 99;[2] *Gillham* v. *Madison R. R.*, 49 Ill. 484; *Ogburn* v. *Connor*, 46 Cal. 346; *Kauffman* v. *Griesemer*, 26 Pa. St. 407;[3] *Bassett* v. *Salisbury M. Co.*, 43 N. H. 569;[4] Ang. on Wat. Cour., sec. 108 a, b, c, d, and e.)

IV. Appellant having flowed the waste water from his irrigation upon the respondent's land for five years adversely, and under claim of right so to do, has acquired a right by prescription. (*Earl* v. *De Hart*, 1 Beasley, 285;[5] Ang. on Wat. Cour. 108 h, 108 i, 206 a, and 372; *Sargent* v. *Gutterson*, 13 N. H. 467; *Cowell* v. *Thayer*, 5 Met. 253.[6])

The infringement of a right is sufficient. (*Brown* v. *Ashley*, 16 Nev. 315, 316; Ang. on Wat. Cour., sec. 135; *B. M. Co.* v. *N. M. Co.*, 16 Pick. 241; *Munroe* v. *Stickney*, 48 Me. 462; *Butman* v. *Hussey*, 12 Me. 407; *Wheatley* v. *Baugh*, 25 Pa. St. 528.[7])

*Robert H. Lindsay*, for Respondent:

I. There is no pretense on the part of appellant that the waste water complained of by respondent comes from any other than purely artificial sources. Upon this state of facts counsel

[1] 88 Am. Dec. 452.    [2] 86 Am. Dec 693.    [3] 67 Am. Dec. 437.    [4] 82 Am. Dec. 179.
[5] 72 Am. Dec. 395.         [6] 38 Am. Dec. 400.         [7] 64 Am. Dec. 721.

for appellant claim that the right of irrigation is a *natural right* in the same sense that the right to breathe the air is a natural right, and that if the respondent is injured or damaged by appellant in his exercise of this natural right to irrigate, he has no redress, as it is *damnum absque injuria.*

That such is not the law of the land is shown by reference to the following cases: *Martin* v. *Jett*, 12 La. 501; 32 Am. Dec. 120; *Ogburn* v. *Connor*, 46 Cal. 346;[1] *Butler* v. *Peck*, 16 Ohio St. 334;[2] *Laney* v. *Jasper*, 39 Ill. 54; *Merritt* v. *Parker*, 1 Coxe, 460; *Delahoussaye* v. *Judice*, 13 La. Ann. 587;[3] *Adams* v. *Walker*, 34 Conn. 466;[4] *Sharp* v. *Hancock*, 8 Scott N. R. 46; *Harrison* v. *G. N. R. R. Co.*, H. & C. Exch. 231; *Livingston* v. *McDonald*, 21 Iowa, 165, 174.[5]

II. A party claiming a prescriptive right to an easement in land must show such an infringement of a right as will occasion damage, and give the party damaged a right of action. " There must be such use of the premises and such damage as will raise a presumption that plaintiff would not have submitted to it unless the defendants had acquired a right so to use it." (*Grisby* v. *C. L. W. Co.*, 40 Cal. 406; *Hansen* v. *McCue*, 42 Id. 310;[6] Woods on Nuis., secs. 709, 716, 719; *Crosby* v. *Bessey*, 49 Me. 539;[7] *Norton* v. *Volentine*, 14 Vt. 239;[8] *Webster* v. *Flemming*, 2 Humph. 518; *Plumleigh* v. *Dawson*, 1 Gilm. 544;[9] *Woodruff* v. *North Bloomfield G. M. Co.*, 9 Saw. 442.)

By the Court, HAWLEY, J.:

This case presents an interesting question which has never been decided in this state. Appellant is the owner of certain lands which require irrigation, and the water used for this purpose flows, by the laws of gravitation, onto the adjacent and lower lands owned and cultivated by respondent. This action was instituted by respondent to recover damages to his land and crops alleged to have been caused by the waste water flowing from appellant's land, and for an injunction. The facts as found by the court, at the request of plaintiff, are as follows: "That plaintiff has been in the possession of and has cultivated all of the lands described in the complaint, except the S. W. quarter of section 20, township 19 N., R. 20 E., since A. D. 1862, and entered into possession of and cultivated said last-mentioned lands since 1875; that defendant entered into pos-

1  13 Am. Rep. 213     2  88 Am. Dec. 482.     3  71 Am. Dec. 521.
4  91 Am. Dec. 742.     5  89 Am. Dec. 563.     6  10 Am. Rep. 299.
7  77 Am. Dec. 271.     8  39 Am. Dec. 229.     9  41 Am. Dec. 199.

session and commenced the cultivation of his said lands in part in 1869, and part in 1870; that at the time of the entry into possession and commencing to cultivate his said land, there was only about 120 acres thereof which was cleared off and ready for irrigation, leaving some one hundred and seventy acres of waste and unbroken land which had never been irrigated; that at the time this action was brought, defendant cultivated and irrigated of said lands mentioned 291 acres; that defendant and his predecessors in interest procured at all times the water necessary for irrigation of said lands through an artificial water-ditch, * * * which conducted the waters of the Truckee River a long distance to said land, as well as waste or surplus waters from the lands of other farmers; that prior to 1878 defendant had only the right to use 150 inches of water from said ditch; that in 1870 he cleaned and enlarged said ditch, and in 1878 said ditch was enlarged to its present capacity by other parties, for the express purpose of protecting the lands of plaintiff from the waste and surplus waters of other farmers; that plaintiff cultivates several hundred acres of land by means of irrigation, and that his said lands are only valuable with the proper use of water; that portions of his said lands are very flat, and the waters discharged thereon from defendant's lands cannot run off, but if so discharged will remain standing thereon until drank up by the soil or evaporated; that in August, A. D. 1882, the surplus or waste waters upon defendant's lands were discharged upon plaintiff's lands, and flooded and covered about forty acres thereof, and remained standing thereon to the depth of three or four inches for ten or twelve days; that plaintiff's system of drainage, and his ditches therefor, are sufficient for his own and ordinary necessities, but are insufficient to collect and control the waters from defendant's lands."

In a dry and arid climate, where irrigation is necessary in order to cultivate the soil, the question as to the rights of the proprietors of upper and lower lands in regard to the waste water has seldom arisen, because, as a general rule, the lower land-owner is willing to receive, dispose of, and profit by the use of all water flowing from the upper lands of another in irrigating his own land.    It is seldom that any land-owner in this state has occasion to complain of too much water.    The cry is, usually, not for less, but for more.    As to the flow of water

caused by the fall of rain, the melting of snow, or natural drainage of the ground, the prevailing doctrine is, that when two tracts of land are adjacent, and one is lower than the other, the owner of the upper tract has an easement in the lower land to the extent of the water naturally flowing from the upper land to and upon the lower tract, and that any damage that may be occasioned to the lower land thereby is *damnum absque injuria.* Water seeks its level, and naturally flows from a higher to a lower plane; hence the lower surface, or inferior heritage, is doomed by nature to bear a servitude to the higher surface, or superior heritage, in this, that it must receive the water that naturally falls on and flows from the latter. The proprietors of the lower land cannot complain of this, for *aqua currit et debet currere ut solebat.* But this rule — this expression of the law — only applies to waters which flow naturally from springs, from storms of rain or snow, or the natural moisture of the land. Wherever courts have had occasion to discuss this question, they have generally declared that the servitude of the lower land cannot be augmented or made more burdensome by the acts or industry of man. (See authorities cited in the briefs of counsel.)

Washburn, referring to the respective rights of adjacent land-owners, in respect to waters which fall in rain, or are in any way found upon the surface, but not embraced under the head of streams or watercourses, nor constituting permanent bodies of water, like ponds, lakes, and the like, before reviewing the authorities upon the subject, says: "It may be stated, as a general principle, that by the civil law, where the situation of two adjoining fields is such that the water falling, or collected by melting snows, and the like, upon one naturally descends upon the other, it must be suffered by the lower one to be discharged upon his land, if desired by the owner of the upper field. But the latter cannot, by artificial trenches, or otherwise, cause the natural mode of its being discharged to be changed to the injury of the lower field, as by conducting it by new channels, in unusual quantities, onto particular parts of the lower field." (Wash. Eas. 450.)

In *Livingston* v. *McDonald,* 21 Iowa, 160,[1] the court declared, after reviewing numerous authorities, that the owner of the upper land had no right, even in the course of the use and im-

---

[1] 86 Am. Dec. 563.

provement of his farm, to collect the surface water upon his own lands into a drain or ditch, increased in quantity, or in a manner different from the natural flow, and discharge the same upon the lower lands of another, to the injury of such lands.

In the case under consideration, the facts are different from any of the decided cases. Here both .parties are farmers, engaged in the ordinary cultivation of their respective lands by artificial irrigation. To conduct and carry on this business profitably, it is absolutely necessary to bring water from points where it can be obtained, remote and distant from their lands. Without the reasonable use of this water, their lands would be comparatively worthless. The law should not be so construed as to deny or materially abridge the rights of either party to prosecute his agricultural pursuits, or deprive him of any of the incidents necessary to cultivate and improve his lands. We are of the opinion that the upper land-owner, while having the undoubted right to make a reasonable use of the water for irrigation, must so use, manage, and control it as not to injure his neighbor's land. *Sic utere tuo ut alienum non lædas.* He should not be permitted to make his estate more valuable by an act which renders the estate of the owner of the lower lands less valuable. This general doctrine is derived from the civil law; it is in harmony with the rules established by a majority of the decided cases having any analogy to the case at bar, and it is, in our opinion, founded upon substantial reasons of justice and equity. In the discussion of these principles, the words of Pothier are often quoted with approval: "Each of the neighbors may do upon his heritage what seemeth good to him; in such manner, nevertheless, that he doth not injure the neighboring heritage." (*Shane* v. *Kansas City R. Co.,* 71 Mo. 245.[1])

In *Livingston* v. *McDonald, supra,* the court said: " In examining this subject, and in seeking to settle it upon proper principles, it would be inexcusable to overlook the doctrines of the civil law respecting it. That law, embodying the accumulated wisdom and experience of the .refined and cultivated Roman people for over a thousand years, though not binding as authority, is often of great service to the inquirer after the principles of justice and right. * * * In the determination of this case, we recognize the general rule that each may do

[1] 36 Am. Rep. 480.

with his own as he pleases; but we also recognize the qualification that each should so use his own as not to injure his neighbor."

But it is claimed by appellant that he has acquired the right by prescription to have the waste water flow down to and upon the lands of respondent, and that the court erred in giving certain instructions in relation to this right. We are of opinion that the instructions substantially embody correct principles of law that are applicable to the facts of this case; that the objections urged are more technical than substantial; and that it is apparent, even if the instructions were erroneous to some extent, that the jury could not have been misled thereby to the prejudice of appellant. It is useless to discuss the particular phraseology in the instructions to which objection is made, for it is manifest, from the findings of the court and jury, that appellant failed to prove the essential facts necessary to enable him to defeat the action on this ground. The court, at the request of defendant, found the following facts: "That from 1870 to 1879, both years inclusive, defendant irrigated the lands mentioned in the answer herein, and used water thereon, in sufficient quantity to raise valuable crops of grass and hay; that the quantity of water so used by defendant, during this period, varied in quantity each year, but was always sufficient in amount to properly and reasonably irrigate his said lands; that the waste water arising from such irrigation flowed upon plaintiff's lands; that such flowing was open, notorious, continuous, peaceable, and uninterrupted, and under claim of right, and an infringement of the estate of plaintiff; but that the quantity of water flowing from this irrigation, and the manner of its use, was not the same, but different, during the years, and it was not shown or determined what quantity of surplus or waste water was so permitted or suffered to flow or drain upon plaintiff's land, during any time of said period, and the same did not result in any damage to plaintiff's estate."

In the findings requested by the plaintiff, the court says: "That defendant has steadily increased the quantity of water used upon this land, and the surplus thereof, since A. D. 1869; that neither defendant nor his predecessors in interest, at any time for five years, continuously, under claim of right, openly notoriously, peaceably, and with the acquiescence of the plaintiff, [did] flow, or suffer or permit to flow, any certain

quantity of surplus or waste water, arising from the irrigation of his lands, upon the lands of plaintiff."

The jury, in answer to the special issues submitted in this case, found that the defendant, in the irrigation of his lands in the years 1880, 1881, and 1882, used "more water than was used in preceding years"; that the surplus water discharged upon plaintiff's land in these years was " greater in quantity than in previous years"; that the plaintiff objected against the discharge of water upon his lands, and remonstrated with defendant " whenever water was discharged on his land to his claimed damage"; that in 1881 and 1882 the waste or surplus water flowing upon plaintiff's land was twice turned off, and the flow thereof 'ceased, " upon request or demand made by plaintiff." All of these findings are sustained by the evidence.

A mere acquiesence or permission on the part of the respondent, to allow the flow of the waste or surplus water in such limited quantity as did his land no injury, cannot be so construed as to give appellant a prescriptive right to increase the flow to such an extent as to damage respondent's land. (*Blaisdell* v. *Stephens*, 14 Nev. 23.[1]) Appellant failed to show to the satisfaction of the court and jury that he had continuously exercised the right of flowing the waste water upon respondent's land for the period of five years without any substantial change. On the contrary, the evidence shows, as the findings state, that appellant " has steadily increased the quantity of water used upon his land "; and that the surplus water by him discharged upon the respondent's land in the years A. D. 1880, 1881, and 1882 was greater in quantity than in previous years."

The right acquired by prescription is only commensurate with the right enjoyed. The extent of the enjoyment measures the extent of the right. The right gained by prescription is always confined to the right as exercised for the full period of time required by the statute, which is, in this state, five years. A party claiming a prescriptive right for five years, who, within that time, enlarges the use, cannot at the end of that time claim the use as enlarged within that period. To acquire the right, it was incumbent on appellant to prove that he had, for the full period of five years, flowed the water upon respondent's land to such an extent as to occasion damage and give respondent a right of action. The right by prescription had its origin in a grant, and where a grant is lost, the user is the

[1] 33 Am. Rep. 523.

only evidence of the right supposed to have been granted, and the presumption of a grant can only exist where there has been an open, adverse, continuous, and uninterrupted user to the full extent and nature of the easement claimed.   The acts by which the right is sought to be established must be such as to operate as an invasion of the right claimed to such an extent that during the whole period of use the party whose estate is sought to be charged with the servitude could have maintained an action therefor.   The findings in this case also state that, within five years prior to the commencement of this action, the respondent remonstrated with and denied the right of appellant to flow the surplus water over his (respondent's) land to such extent or in such quantity as to damage the same, or the crops growing thereon, and that upon respondent's request appellant ceased to flow the water.   This was sufficient to show that the use to the extent claimed was not acquiesced in by respondent, and to prevent the presumption of a grant authorizing such flow of the water.

There is no assignment of error which authorizes this court to consider any of the objections urged by appellant against the injunction granted by the court.   The judgment of the district court is affirmed.