(No. 6731.   May 9, 1940.)

FRANK McGLOCHLIN et al., Respondents, v. MANS H. COFFIN et al., Appellants.

[103 Pac. (2d) 703.]

A. F. James, for Appellants.

Bissell & Bird, for Respondents.

WINSTEAD, D. J.—This controversy arose among water users along Silver Creek in Blaine county, Idaho. This stream is a tributary of Little Wood River, which in flood season becomes in turn a tributary of Big Wood River.

Silver Creek has its source near the town of Picabo, south of a section of country known as the Bellevue Flats. It maintains a normal flow and is fed from springs, seasonal surface run-off, waste and seepage from irrigation water applied to the Bellevue Flats from the Big Wood River, which waters seep through the gravelly subsurface of the Bellevue Flats and come to the surface along the course of Silver Creek or percolate underground into it.

During the years between 1913 and 1918, appellants, or their predecessors in interest, excavated certain drain ditches through different parts of the Bellevue Flats. Thereafter the water which had theretofore percolated underground was collected in the drains and discharged as surface water directly into Silver Creek. Appellants, or their predecessors, diverted from Silver Creek at a lower elevation the equivalent of this water less a certain percentage of loss due to seepage and evaporation. Since the construction of these drains appellants, or their predecessors in interest, have applied to beneficial use the full amount of the waters running in the drains (less the loss in transmission) being concededly necessary for proper irrigation of their lands.

Some years ago appellants or their predecessors in interest were decreed certain fixed amounts of such drainage waters. For certain defects therein, these decretal priorities are void, but they are pertinent as marking the limits of appellants' claims to the water in dispute.

These drains are separately designated and listed upon the records of the watermaster of Water District 11 A. B. of the state of Idaho, who is watermaster in charge of Silver Creek and the waters therefrom. These waters have been continuously measured and distributed since 1921 to appellants or their predecessors in interest, as independent rights on the basis of their claims under such void decrees.

Appellants claimed these waters as developed water and not as part of the augmented flow of Silver Creek, and also by prescription. The trial court found on amply sustaining evidence that it was not developed water, but merely intercepted sources of the direct flow of Silver Creek. The court, however, did award appellants an amount equivalent to the minimum average flow of the respective drains during the maximum five-year period since the construction of the drains.

Respondents are appropriators prior in time to appellants, holding decreed rights under the *Woodworth v. Anthony* (1895) and *Frost v. Alturas Water Co.* (1909) decrees, which decreed the rights to all the waters in Big and Little Wood Rivers and their tributaries.

Appellants claim the right to use all the water flowing in the drains, which fluctuates from year to year and from time to time during the irrigating season each year.

The real question before the court on this appeal is: Did the court err in fixing the amount of water that each of the appellants acquired by prescription?

By the decree, the court below found that appellants had established prescriptive rights which were prior and superior to the rights of respondents. No cross-appeal was taken, so the prescriptive rights are established subject only to the question of their proper measurement.

The basis of the measurement of these rights as determined by the trial court is found in Conclusion of Law No. 7, which reads as follows:

"7. The respective amounts so adversely used by the cross complainants and Kilpatrick Brothers Co. each and every season of the five-year period of such adverse user most favorable to them are the amounts they have acquired by prescription; that such period is that between and including the years 1925 to 1929, and the cross complainants and Kilpatrick Brothers Co. are entitled to awards giving them prior rights to the amounts of water afforded by their respective interests in the drain ditches during the several months comprising the irrigation season of 1929, the year of minimum flow of said drain ditches during said prescriptive period."

The record shows that for some years prior to 1921 appellants or their predecessors in interest took water from Silver Creek at their respective points of diversion on the basis of the discharge of the various drains into Silver Creek, less an agreed allowance for seepage and evaporation. Beginning with 1921 the watermaster began measurements of the water discharged from the drains during each season; and a table of such measurements showing total second-feet discharged from such drains for each of the years 1921 to 1936, inclusive, appears in Finding of Fact No. 12. This table shows a variance from the maximum of 4,687.4 second-feet in 1921 to a minimum of 112.8 second-feet in 1931. There is no evidence that this variance was due to anything except natural conditions, that is, to the character of the season and climatic conditions. There is no evidence that at any time during the measured period respondents interrupted or interfered with the use, or that appellants waived or abandoned the use of water available for use to the extent of their respective claims. The only "interference" was climatic conditions which reduced the volume of discharge.

The court below held against appellants upon any theory of developed water in the respective drains, but assigned the various prescriptive rights to specific drains. The decree is not based upon prescriptive rights to use a designated quantity of water at appellants' respective points of diversion from Silver Creek to their ranches. The case was tried and determined upon the theory that each drain in effect was a feeder stream tributary to Silver Creek.

It is contended by the appellants and found by the court that appellants during the period from 1921 to 1936, inclusive, claimed and used all of the water discharged from the respective drains and applied same to beneficial use. The question then arises: Do variations in use due to variations in discharge from the drains caused by drouth conditions only, constitute interruptions in continuity of use so as to limit or restrict the prescriptive right?

Counsel for respondents lays stress upon the case of *Boynton v. Longley*, 19 Nev. 69, 6 Pac. 437, 3 Am. St. 781, in support of the judgment below and the system of measurement of the prescriptive rights therein determined. He quotes from that opinion as follows:

"The right acquired by prescription is only commensurate with the right enjoyed. The extent of the enjoyment measures the extent of the right. The right gained by prescription is always confined to the right as exercised for the full period of time required by the statute."

An examination of that case discloses that there the claimant through his own action attempted to enlarge the user each year during the prescriptive period. The court held, and we think properly, that "A party claiming a prescriptive right for five years, who, within that time, enlarges the use, cannot, at the end of that time, claim the use as enlarged within that period."

That case is one of the leading cases on the acquisition of prescriptive rights and the rules therein announced have been approved and followed in numerous cases in this jurisdiction. However, the facts in the instant case are entirely dissimilar. If we take the table of discharge from the drains into consideration, we find that the highest measurement of discharge from the drains occurred in 1921, the first year of measurement. There is a variation from 4,687.4 second-feet in 1921 to a minimum of 112.8 second-feet in 1931. There was not an enlargement of use, as in the *Boynton v. Longley Case*. There was a variation or fluctuation in the use due to natural causes beyond appellants' control, caused by drouth conditions and not due at any time in the entire period of measurement to interference or interruption on the part of respondents. Here also the variation ran down from the peak in 1921,

not up. There is here no question of enlargement of use, and therefore the *Boynton v. Longley Case* is not in point.

There are authorities to the effect that continuous use of water for purposes of irrigation does neither require nor contemplate constant use of the full amount claimed. As was stated in *Martin v. Burr*, 111 Tex. 57, 228 S. W. 543, at page 546:

"We think the rule as to continuity in the use of water which is laid down by Mr. Kinney is consonant with sound reason. He says:

" 'The adverse user only during the season when the water is needed constitutes a sufficient continuous user of either the water or the easement used in connection therewith, as the omission to use the water when it is not needed by the claimant does not break the continuity of the user as far as acquiring a right by prescription is concerned. Water for irrigation, for example, is not needed at all seasons of the year; and, again, it may not be needed every day of the irrigation season. In general, it may be said that the right to its use may be acquired adversely, as it may be acquired by appropriation by periods of time. If, whenever the claimant needs the water from time to time, he makes use of it, whether the use be every day, or once every week, or twice a month, or whenever his needs require it, this is a continuous use.' 2 Kinney on Irrigation and Water Rights, § 1052, p. 1890.

"The rule is laid down by Greenleaf as follows:

" 'So proof of the exercise of the right whenever the party had occasion to do so, as, for example, the right to take clay to make bricks, is sufficient, without showing that it was in fact exercised at all times of the year, though it is so alleged in the plea.' 2 Greenleaf on Evidence (16th Ed.) § 544, p. 511.''

To the same effect see *Irrigated Valleys Land Co., etc., v. Altman*, 57 Cal. App. 413, 207 Pac. 401, where at page 408, the court said:

"It is true that one witness testified that in the year 1916 no water from the ditch was used on the land, the explanation being that the spring of 1916 was a late, wet season, and that there was really no necessity for using the ditch. This testimony came from the 1916 lessee of the 160-acre tract. This

though, if true, would not be such an omission in the use of the ditch as to have the effect of breaking the continuity of the user. The failure, if any, to use the ditch in the year 1916 was not due to any act of the owner, but to the fact only that the circumstances were such that water from the ditch was not needed. The omission amounted neither to a nonuser nor evidence of an intention to abandon the easement. In other words, as counsel for the defendants well say, 'continuous use' does not necessarily mean 'constant use.' Where one who claims an easement uses it as often as it may be necessary for him to do so, the use is generally held to be continuous, and this is particularly true with reference to easements connected with irrigation. *Hesperia Land & Water Co. v. Rogers,* 83 Cal. 10, 23 Pac. 196, 17 Am. St. Rep. 209; *Bodfish v. Bodfish,* 105 Mass. [317], 319.''

In Corpus Juris (67 C. J. 942) the rule is laid down:

''Continuous and uninterrupted use has been said to mean a use not interrupted by the acts of the owner of the servient estate or voluntary abandonment by the easement claimant.''

As applied to the use of water, it is said in *Armstrong v. Payne,* 188 Cal. 585, 206 Pac. 638:

''To interrupt the running of the statute of limitations as to flowing water, there must be a resumption of possession thereof under a claim of right brought home to the adverse claimant either by express notice to that effect or by conduct so notorious and unequivocal as to imply such notice. In other words, the interruption of possession must rise in dignity and character to that required to initiate an adverse possesion.''

In Corpus Juris (67 C. J. 943) it is also stated:

''Interruptions from natural causes, or those by acts of God, of the public enemy, or the like, do not effectively break the continuity of possession so as to prevent the acquisition of prescriptive rights.''

Applying the rule that ''the right gained by prescription is always confined to the right exercised during the full period of time required by statute'' to the facts in the instant case, what do we find to be the right exercised and enjoyed?

For a full and consecutive period of sixteen years, taking into consideration only the period of water measure-

ments from the drains, and disregarding the prior period of use during which no measurements of the discharge of the drains were made, the appellants applied the equivalent of all the water emptying into Silver Creek from the drains up to the amount of their respective claims, less a deduction for seepage and evaporation in delivery, to beneficial use upon their respective lands. The discharge of the drains varied from year to year because of the character of the seasons, there being naturally less discharge in drier seasons due to what may be termed drouth conditions. During these low water seasons, appellants made no claim to the other waters of Silver Creek, but limited their claims and their use to the waters actually discharged from the drains. They took during all of these years the equivalent of all water emptied into Silver Creek by the drains and in so doing acted openly, notoriously, adversely and under claim of right.

The right claimed, the right exercised and the right enjoyed were equal, that is, the right to the use of the entire discharge of the drains into Silver Creek each season, up to the amount of their claims. The exercise of this right covered a period of more than twenty years, much longer than the prescriptive period of five years provided by the Idaho statutes.

Did appellants' failure in the dry years, to take from Silver Creek more than the drains emptied into it, limit their water rights to the amount of the discharge from the drains during these years?

As suggested above, the decrease in discharge of the drains was not due to interruption or interference on the part of the respondents with the right, nor to any voluntary abandonment by claimants. If an interruption, it was an interruption due to natural causes. Appellants still maintained their claims and in each wet season which succeeded the dry seasons, and particularly the dry season of 1929, again took the full amount of their claims without either interference or interruption on the part of the respondents.

We are of the opinion that interruptions from natural causes did not, and do not, break the continuity of possession and that appellants are entitled to prescriptive rights to the use of water from Silver Creek measured by the full discharge

of the respective drains to the full amount of their respective claims; that the flow of each drain, where it empties into Silver Creek, has been and is the measure of the quantity of water to which appellants are entitled less loss in transmission.

It follows then that the trial court erred in his measurement of the rights granted appellants; and the judgment is reversed with instructions to modify such judgment by granting to appellants the exclusive right to divert from Silver Creek, and use upon their respective lands, the amount of water equivalent to the amount of water discharged from their respective drains to the extent of their claims and rights in said drains, less their proportionate part of transmission losses, if any, in Silver Creek, between the point where said drain water empties into said creek and the points where it is diverted therefrom, as such ownership of lands, rights claimed and drain interests appear in Finding of Fact No. 12 of said trial court.

Ailshie, C. J., Morgan and Holden, JJ., concur.

Givens, J., dissents.

Budge, J., deeming himself disqualified, did not sit and Winstead, D. J., sat in his place.

Petition for rehearing denied.