(No. 7248.   October 4, 1945.)

DIMOND M. LOOSLI and HATTIE LOOSLI, his wife, Appellants, v. E. E. HESEMAN, Respondent.

[162 Pac. (2d) 393.]

Ralph L. Albaugh and Errol H. Hillman for appellants.

F. L. Soule and C. W. Poole for respondent.

MILLER, J.—This action was commenced August 10, 1943, by appellants, owners of the SE¼SE¼ of Section 32, township 9 N., R. 43 E.B.M., to quiet title to an alleged right-of-way or easement for drainage of irrigation waste water from their land onto and across land of respondent adjoining that of appellants on the west. The answer of respondent puts in issue the material allegations of the complaint incident to said alleged easement, and respondent's cross complaint alleges that he is the owner of the SW¼SE¼ and the E½SW¼ of said Section 32, township 9 N., R. 43 E.B.M., over which appellants seek an easement, and prays that it be adjudged and decreed that he is the owner and entitled to the possession of said land, and that appellants have no right, title, estate or interest or easement in or to or over any part thereof.

The cause was tried by the Court. Findings of fact and conclusions of law were filed, and judgment and decree in favor of respondent was entered in accordance with the prayer of the cross complaint. The appeal is from the judgment. Appellants' brief contains a number of assignments of error, practically all of which assert the insufficiency of the evidence to support the findings.

The record discloses that the parties to the action have owned and cultivated the lands above described since 1919. Said lands will produce agricultural crops without irrigation but will produce more diversified, better and more abundant crops when adequate irrigation water is applied. There is a depression or swale across a portion of appellants' land that extends onto and across the land of respondent. At the time these lands were acquired by the litigants their water rights were limited in amount. In 1939 storage water was made available and irrigation water became more plentiful. It is claimed by appellants that they cannot successfully irrigate their lands without some of the waters escaping and running into the swale and onto respondent's land, and that this condition has existed to some extent since 1920. Respondent denies that any irrigation waste water from appellants' land has flowed onto his land, except in 1935, when a son of appellants, who was doing the irrigating, left the premises and neglected his work, and, again, in 1942 and 1943, when a levee, which was constructed in 1938 by respondent across the depression or swale where it entered his land on the east was cut by appellants, in order to allow ponded water on appellants' land to escape into the swale on respondent's land, and which cuts in the levee were immediately repaired. No attempt was made to prove the amount of waste water that has flowed onto the respondent's land because of the irrigation of appellants' land for any year. There is no natural channel in the depression or swale and respondent has planted, cultivated and raised crops therein from year to year.

The trial court found that there is a depression, referred to as a "swale", originating on appellants' land and extending westward onto the land of respondent; that in May, 1938, respondent constructed a dam or levee across said depression or swale immediately west of the division line of the lands of the litigants, which was about three feet high at the highest point, and about two hundred fifty feet long, and in 1939 respondent constructed a ditch on and across said levee and used same for the irrigation of his land beyond the swale; that appellants have never, at any time, for any continuous period of five successive years prior to the commencement of this action, "either openly, uninterruptedly, notoriously, exclusively, adversely, or actually, or under claim of right", flowed or discharged

any of their excess or waste irrigation water upon, over or across respondent's land; that it is not true that appellants are the owners of the right to have any excess or waste irrigation water from their premises flow upon, onto or across respondent's land through said swale, and it is not true that any such right is appurtenant to the premises owned by appellants. From the findings the Court concluded that appellants are not entitled to any relief; that respondent is entitled to a decree upon his cross complaint quieting his title against appellants and their successors in interest, and they are forever barred and enjoined from asserting any right, title, interest, claim of easement or right of way in or to or over any portion of respondent's land. There is a pronounced conflict in the testimony on the material facts. The trial court in his "memorandum" has this to say: "The right contended for by the plaintiff has not been established by clear and satisfactory evidence. In fact, it appears to me that the evidence preponderates in favor of the defendant." A review of the record leads to the conclusion that the deductions of the trial court are correct.

In the concluding argument it was persuasively urged that the trial court had failed to properly consider the physical facts involved, and especially that appellants' land requires irrigation and that the water used for such purpose flows, by the laws of gravitation, onto the adjacent and lower land owned and cultivated by respondent, and because of such failure to consider said matters the findings are not properly supported.

Inasmuch as the major assigned errors relate to the insufficiency of the evidence to support the findings, and, incidentally, some of the conclusions resulting therefrom, we think all that need be said in that connection is to invite attention to the case of *Checketts v. Thompson,* 65 Ida. 715, 152 P. (2d) 585, and cases therein cited, wherein it is said:

"This court has repeatedly held that where conflicting evidence is submitted to a trial court sitting without a jury, either as a court of law or a court of equity, the findings of the court on questions of fact will not be disturbed where there is competent evidence to support them." (See, also, *Nelson v. Altizer,* 65 Ida. 428, 144 P. (2d) 1009.)

And, again, in the case of *Wieri v. Anaconda Mining Co.,* (Mont.), 156 P. (2d) 838, 841, it is said:

"On the review of a decision of the District Court the presumption is that the decree of that Court is correct (citing authorities), and that its judgment will not be set aside unless there is a clear preponderance of the evidence against it."

A case that presents an array of similar facts, as in the instant case, is *Boynton v. Longley,* 19 Nev. 69, 6 P. 437, 3 Am. St. Rep. 781. There as here is a case of the rights of upper and lower land owners, where irrigation is necessary in order to successfully cultivate the soil and produce crops, and where irrigation waste water flows from the upper onto the lower lands. There as here the quantity of waste water flowing from the upper onto the lower lands varied each year. There as here the upper land owner steadily increased the amount of water used upon his lands. There as here the owner of the lower land remonstrated with the owner of the upper land and objected to the discharge of surplus irrigation waste water upon his lands. There as here the waste water flowing onto the lands of the lower owner was turned off on occasions and the flow ceased when request was made by the lower land owner. There as here there was no natural channel to carry off any surplus or waste water because of the use of the irrigation water on the upper lands. There as here the parties are farmers, engaged in the cultivation of their lands and the growing of crops by artificial irrigation. There as here apparently it was the custom to some extent for upper landowners to allow their irrigation waste water to flow onto the lands of lower proprietors. The annotations to *Boynton v. Longley,* supra, reported in 3 Am. St. Rep. 787, state:

"Upper land-owner has easement of drainage in land of lower proprietor to the extent of the water naturally flowing from the upper to the lower tract; (citing a long list of authorities) but the servitude in the lower land cannot be augmented or made more burdensome by the acts or industry of the upper land owner." (Citing numerous authorities.)

In the case of *Livingston v. McDonald,* 21 Iowa 160, an action by the lower against the upper landowner for dam-

ages on account of drainage water flowing onto and over the land of the lower proprietor, the remarks of Dillon, J., are pertinent, to-wit:

"The questions presented in this case are, in this State, now for the first time to be judicially determined. They are questions of no ordinary interest to the jurist, and of no ordinary importance to the citizen and property owner. In adjudicating them we must duly regard, on the one hand, the just rights of property, and on the other the just demands of agriculture and the improvement of land for farming and agricultural purposes. There is no statute in this State, as there is in some others, defining or regulating the rights of adjacent owners in respect to ditches or drainage. (Citing authorities). The rights of the parties are therefore to be determined upon the general principles of the law. Before proceeding to state these as applicable to the case, it is advisable to bring out and define somewhat more definitely the exact nature of the case itself. The defendant is the proprietor of the higher ground or superior heritage or estate; the plaintiff of the lower and inferior estate. Naturally the water drains or flows from the defendant's low or slough land, into and upon the like land of the plaintiff.

"The work of the defendant of which the plaintiff complains, is what is termed a *mole* or underground ditch or drain, about two hundred yards in length artificially constructed, a short distance below the surface in the low or slough land of the defendant, and terminating in an open end or mouth near the land of the plaintiff, through which mouth it discharges the water, which, in its course it has received and collected. * * * The water in question, it must be remembered, was not a running, *natural stream,* with a defined and known channel. With respect to such waters the principles of law, regulating the rights of adjacent proprietors, are well settled. They are nowhere more perspicuously and accurately expressed than by Chancellor Kent (3 Com., 439, 440), whose statement of the law on this subject has, on more than one occasion, been approvingly quoted and followed by the English courts. *Embrey v. Owen,* 6 Exch. 353, 369, per Parke, B.; *Wood v. Waud,* 3 Id., 775. * * * This is strictly a question of drainage, a question relating to *surface* or superficial percolating waters, which, though customarily and naturally flowing in a known direction and course, have, nevertheless, no

banks or *channels in the soil.* \* \* \* So with equal force and point, Lewis, Ch. J., in delivering his opinion in a recent and well considered case (*Wheatly v. Baugh,* 25 Penn. (1855), 528) remarked: 'Accordingly the law has never gone so far as to recognize in one man a right to convert another's farm to his own use *for the purposes of a filter.'* \* \* \* In the determination of this case we recognize the general rule that each may do with his own as he pleases; but we also recognize the qualification, that each should so use his own as not to injure his neighbor. *Sic utere tuo ut alienum non laedas.* \* \* \* The court, in substance, laid down the law to the jury to be that if the ditch in question *increased the quantity of water* upon the plaintiff's land to his injury, or without increasing the quantity, threw it upon the plaintiff's lands in a *different manner,* from what the same would naturally have flowed upon it to his injury, the defendant was liable for the damage *thus* occasioned, even though the ditch was constructed by the defendant in the course of the ordinary use and improvement of his farm. \* \* \* We recognize the fact (to use Lord Tenterden's expression) that surface water or slough water is a common enemy which each landowner may reasonably get rid of in the best manner possible; but in relieving himself he must respect the rights of his neighbor, and cannot be justfiied by an act having the direct tendency and effect to make that enemy less dangerous to himself and more dangerous to his neighbor. He cannot make his estate more valuable by an act which unnecessarily renders his neighbor's less valuable. \* \* \* And in so holding we do not think we unduly abridge or unreasonably narrow the right to make drains for the improvement or reclamation of low or wet lands. Very little is gained if the same act which dries up one tract of land renders the adjoining tract twice as difficult to redeem." (See, also, *Shane v. K. C., St. Jo. & C. B. R. R.,* 71 Mo. 237, which case quotes approvingly from *Livingston v. McDonald,* supra.)

Reverting to the Boynton-Longley case, which the author says, "presents an interesting question which has never been decided in this state," we quote liberally therefrom because of the similarity of facts and the legal questions involved. Therein it is said:

"It is seldom that any land-owner in this state has occasion to complain of too much water. The cry is, usually,

not for less but for more. As to the flow of water caused by the fall of rain, the melting of snow, or natural drainage of the ground, the prevailing doctrine is that when two tracts of land are adjacent and one is lower than the other, the owner of the upper tract has an easement in the lower land to the extent of the water naturally flowing from the upper land to and upon the lower tract and that any damage that may be occasioned to the lower land thereby is *damnum absuque injuria*. Water seeks its level and naturally flows from a higher to a lower plane; hence the lower surface, or inferior heritage, is doomed by nature to bear a servitude to the higher surface, or superior heritage, in this: that it must receive the water that naturally falls on and flows from this latter. The proprietors of the lower land cannot complain of this, for *aqua currit et debet currere ut currere solebat.* (A running stream should be left to flow in its natural channel without alteration or diversion.) But this rule—this expression of the law—only applies to waters which flow naturally from springs, from storms of rain or snow, or the natural moisture of the land. Wherever courts have had occasion to discuss this question they have generally declared that the servitude of the lower land cannot be augmented or made more burdensome by the acts or industry of man."

The author then quotes from Washburn on Easements, 450, as follows:

" 'It may be stated as a general principle that by the civil law, where the situation of two adjoining fields is such that the water falling or collected by melting snows and the like upon one, naturally descends upon the other, it must be suffered by the lower one to be discharged upon his land, if desired by the owner of the upper field. But the latter cannot, by artificial trenches or otherwise, cause the natural mode of its being discharged to be changed to the injury of the lower field, as by conducting it by new channels in unusual quantities onto particular parts of the lower field.' * * * In the case under consideration the facts are different from any of the decided cases. Here both parties are farmers, engaged in the ordinary cultivation of their respective lands by artificial irrigation. To conduct and carry on this business profitably, it is absolutely necessary to bring water from points where it can be obtained, remote and distant from their lands.

Without the reasonable use of this water their lands would be comparatively worthless. The law should not be so construed as to deny or materially abridge the rights of either party to prosecute their agricultural pursuits, or deprive them of any of the incidents necessary to cultivate and improve their lands. We are of opinion that the upper landowner, while having the undoubted right to make a reasonable use of the water for irrigation, must so use, manage, and control it as not to injure his neighbor's land. *Sic utere tuo ut alienum non laedas.* He should not be permitted to make his estate more valuable by an act which renders the estate of the owner of the lower lands less valuable. This general doctrine is derived from the civil law; it is in harmony with the rules established by a majority of the decided cases having any analogy to the case at bar, and it is, in our opinion, founded upon substantial reasons of justice and equity. In the discussion of these principles the words of Pothier are often quoted with approval: 'Each of the neighbors may do upon his heritage what seemeth good to him; in such manner, nevertheless, that he doth not injure the neighboring heritage.' (See *Shane v. K. C., etc., R. R. Co.,* supra.) * * * But it is claimed by appellant that he has acquired the right by prescription to have the waste water flow down to and upon the lands of respondent, and that the court erred in giving certain instructions in relation to this right. We are of opinion that the instructions substantially embody correct principles of law that are applicable to the facts of this case; * * *. * * * The jury, in answer to the special issues submitted in this case, found that the defendant, in the irrigation of his lands in the years 1880, 1881, and 1882, used 'more water than was used in preceding years;' that the surplus water discharged upon plaintiff's land in these years was 'greater in quantity than in previous years;' that the plaintiff objected against the discharge of water upon his lands, and remonstrated with defendant 'whenever water was discharged on his land to his claimed damage;' that in 1881 and 1882 the waste or surplus water flowing upon plaintiff's land was twice turned off, and the flow thereof ceased, 'upon request or demand made by plaintiff.' All of these findings are sustained by the evidence.

"A mere acquiescence or permission on the part of the respondent to allow the flow of the waste or surplus water

in such limited quantity as did his land no injury, cannot be so construed as to give appellant a prescriptive right to increase the flow to such an extent as to damage respondent's land. (*Blaisdell v. Stephens,* 14 Nev. 23.) Appellant failed to show to the satisfaction of the court and jury that he had continuously exercised the right of flowing the waste water upon respondent's land for the period of five years without any substantial change. On the contrary, the evidence shows, as the findings state, that appellant 'has steadily increased the quantity of water used upon his land;' and that the surplus water by him discharged upon the respondent's land in the years A.D. 1880, 1881, and 1882 was 'greater in quantity than in previous years.'

"* * * The right gained by prescription is always confined to the right as exercised for the full period of time required by the statute, which is, in this state, five years. A party claiming a prescriptive right for five years, who, within that time, enlarges the use, cannot, at the end of that time, claim the use as enlarged within that period. To acquire the right, it was incumbent on appellant to prove that he had, for the full period of five years, flowed the water upon respondent's land to such an extent as to occasion damage, and give respondent a right of action. The right by prescription had its origin in a grant and where a grant is lost, the user is the only evidence of the right supposed to have been granted, and the presumption of a grant can only exist where there has been an open, adverse, continuous and uninterrupted user to the full extent and nature of the easement claimed. The acts by which the right is sought to be established must be such as to operate as an invasion of the right claimed to such an extent that during the whole period of use the party whose estate is sought to be charged with the servitude could have maintained an action therefor. The findings in this case also state that, within five years prior to the commencement of this action, the respondent remonstrated with and denied the right of appellant to flow the surplus water over his (respondent's) land to such extent or in such quantity as to damage the same, or the crops growing thereon, and that upon respondent's request appellant ceased to so flow the water. This was sufficient to show that the use to the extent claimed was not acquiesced in

by respondent, and to prevent the presumption of a grant authorizing such flow of the water."

In the case of *Last Chance Ditch Co. v. Sawyer, et al,* 35 Ida. 61, 204 P. 654, it is held:

"Finally, it is contended by appellant that the burden is on the party claiming the right by prescription to show the extent and the amount of his user and of the right claimed. This position is undoubtedly correct. (*Boynton v. Longley,* 19 Nev. 69, 6 P. 437, 3 Am. St. Rep. 781; *Strong v. Baldwin,* 137 Cal. 432, 70 P. 288; *Crosier v. Brown,* 66 W. Va. 273, 66 S.E. 326, 25 L.R.A. (N.S.) 174."

And, again:

"The respondents having alleged a prescriptive right, the burden rested upon them to establish it by evidence reasonably clear and convincing."

In the case of *State v. Hiber, et al,* (Wyo.), 44 P. (2d) 1005, in discussing the right of an upper to discharge surplus or waste water upon a lower landowner, and in the consideration of many authorities, among other things, the Court said:

"These rights, however, cannot be exercised against another in any of the jurisdictions, if the water is not surface water, but the water of a natural stream. Hence, have arisen the cases involving the question as to whether particular water was of the one kind or the other. As in Nevada, so in this state, it is seldom that any landowner has occasion to complain of too much water. 'The cry is, usually, not for less but for more.' (*Boynton v. Longley,* 19 Nev. 69, 6 P. 437, 438, 3 Am. St. Rep. 781.) Yet, generally speaking, so far as can be perceived, the problem as to what constitutes a natural stream has not been treated in the arid regions differently than in the states further east, where the doctrine of appropriation does not apply.

\* \* \* The fact that water in the arid regions is necessary for irrigation or domestic use is no reason in itself why the owner of land should be deprived of all rights in connection therewith, for when the benefit accruing from appropriation is offset by the detriment to another, the public welfare is not, in the absence of other circumstances, thereby increased. Hence we are permitted to pursue inquiry

into our subject by consultation of authorities in any jurisdiction.

"It is said by Kinney, supra, Sec. 303, that 'according to the great weight of authority, the essential characteristics of a water course are: A channel, consisting of a well-defined bed and banks, and a current of water.' * * * In *Hutchinson v. Watson Slough Ditch Co.*, 16 Ida. 484, 101 P. 1059, 133 Am. St. Rep. 125, which involved appropriation of water, the court held that: "a water course is a stream of water flowing in a definite channel, having a bed and sides or banks, and discharging itself into some other stream or body of water. The flow of water need not be constant, but must be more than mere surface drainage occasioned by extraordinary causes; there must be substantial indications of the existence of a stream, which is ordinarily a moving body of water.' "

In the instant case there is no semblance of a definite channel and the proof by various witnesses, including some for appellants, shows that the depression or swale which appellants were attempting to use to carry off their surplus or waste irrigation water was planted to crops and cultivated year by year. It is not contended nor is there any proof that any water resulting from natural causes flowed into the depression or swale from appellants' premises onto the land of respondent.

In the case of *Hall v. Taylor*, 57 Ida. 662, 67 P. (2d) 901, wherein the right to an easement by prescription is involved, this Court held:

" 'The right gained by prescription is always confined to the right as exercised for the full period of time required by the statute, which is, in this state, five years. A party claiming a prescriptive right for five years, who, within that time, enlarges the use, cannot, at the end of that time, claim the use as enlarged within that period.' *Boynton v. Longley*, 19 Nev. 69, 6 P. 437, 441, 3 Am. St. Rep. 781." (See, also, *McGlochlin v. Coffin*, 61 Ida. 440, 103 P. (2d) 703.)

In the case of *Minto v. Salem Water Light & Power Co.*, 120 Ore. 202, 250 P. 722, 726, and which had under consideration the methods for acquiring an easement, it is said:

"Having reached the conclusion that defendant's use of the land is not warranted under the express or implied terms of its grant, we proceed to the inquiry: Has defendant acquired an additional easement by prescription or adverse possession which would give it the right so to operate? To create an easement by prescription, it is essential that the use must have been open, continuous, exclusive and under claim of right for statutory period. Substantially the same elements must exist as where title to real property is acquired by adverse possession. (Citing cases). A prescriptive easement can never ripen out of mere permissive use, no matter how long exercised. 19 C.J. 897."

Counsel for appellants stress the cases of *Beasley v. Engstrom,* 31 Ida. 14, 168 P. 1145, and *Johnson v. Gustafson,* 49 Ida. 376, 288 P. 427, both Bonneville County cases, as supporting their theory and contention, which is undoubtedly correct. The above mentioned cases, however, differ from the instant case in that they show that the respective respondents had acquired, adversely and under claim of right, a waterway for carrying necessary drainage water from their lands each and every year, during the irrigation season thereof, and that such use had been made in a reasonable, careful and prudent manner.

There is only once prior to 1938, when the levee was constructed, that appellants claim surplus or waste irrigation water flowed onto respondent's land. That was in 1935. When it was called to the attention of Mr. Loosli he stated, in substance, that it was unintentional and was due to the fact that his son, supposedly caring for the irrigation, had left the premises and gone to a picnic. Twice afterwards (1942 and 1943) the levee was cut to allow any ponded water covering about a half acre to escape, but was immediately repaired.

The appellants have failed to establish their right to an easement over and across the land of respondent for carrying off surplus or waste irrigation water. The judgment and decree of the trial court is affirmed. Costs awarded to respondent.

Ailshie, C.J., and Givens, J., concur.

BUDGE, J., concurring specially.—I concur in the affirmance of the judgment.

In my opinion there is only one question presented necessary for consideration and determination on this appeal, namely, whether the excess irrigation water from appellants' forty acre farm actually flowed down upon respondent's farm continuously, adversely, and uninterruptedly for a period of five years, and that by reason thereof appellants acquired a prescriptive right or easement to continue to have their excess irrigation water flow down upon respondent's land.

Upon a conflict in the testimony the court found that the plaintiffs-appellants "never, at any time, for any continuous period of five successive years prior to their commencement of this action, either openly, uninterruptedly, notoriously, exclusively, adversely or actually, or under claim of right, flowed or discharged any of their excess or waste irrigation water from the irrigation of their said tract of land, upon, over or across the said described land of defendant herein", and concluded, as a conclusion of law, that the plaintiffs-appellants "did not have, nor own, and are not the owners of, any right or easement or right-of-way, over or across the said land of the defendant, to have any excess or waste irrigation water from their land flow upon or across defendant's land through said swale, and all claim of plaintiffs to an easement or right-of-way for such purpose, or any purpose, across the land of the defendant, is without right, and the plaintiffs are not the owners of any right of any nature over or across defendant's land which is appurtenant to plaintiffs' land."

If appellants did not, as the court found, acquire an easement or right by prescription to run their waste irrigation water across the land of respondent for five years continuously, openly, notoriously, and adversely, under a claim of right, no right by prescription was acquired by appellants.

The court's findings are supported by the evidence, under the rule announced in *Edwards v. Tenney*, 65 Ida. 784, 154 P. (2d) 143; *Johnson v. Gustafson*, 49 Ida. 376, 288 P. 427; *Consolidated Etc. Min. Co. v. Morton*, 32 Ida. 671, 187 P. 791, said cases holding, in effect, that where findings of fact are made upon conflicting evidence, said

findings will not be disturbed upon appeal where there is substantial evidence to support them.

Wherefore, appellants having wholly failed to establish a case of adverse possession under the provisions of sec. 5-210, I.C.A., the judgment must be affirmed, and it is so ordered. Costs to respondent.

HOLDEN, J., specially concurring.—The lands of the litigants, in this case, are rolling and hilly. In fact, the lands of the litigants are located in a rolling, hilly section of Fremont County. There is testimony by and in behalf of appellants that their lands could not be properly and economically watered without some water flowing through a swale onto respondent's land. On the other hand, there is testimony, in substance, by and in behalf of respondent, that appellants could, and did, except for one or two years, successfully irrigate their lands without causing water to drain onto respondent's land. Where, as here, there is a substantial conflict in the evidence, this court is firmly committed to the rule the findings (in the case at bar in favor of respondent) of the trial court will not be disturbed. (*Edwards v. Tenney,* 65 Ida. 784, 154 P. (2d) 143, 146; *Dickey v. Clarke,* 65 Ida. 247, 142 P. (2d) 597, 599, 602; *Condie v. Swainston,* 62 Ida. 472, 479, 112 P. (2d) 787; *Bussell v. Barry,* 61 Ida. 350, 353, 102 P. (2d) 280; *Aslett v. Evans,* 48 Ida. 206, 209, 280 P. 1036; *Fairbairn v. Keith,* 47 Ida. 507, 511, 276 P. 966; *Heylman v. Idaho Continental Mining Co.,* 43 Ida. 129, 141, 250 P. 1081; *Clegg v. Eustace,* 40 Ida. 651, 655, 237 P. 438; *Clinton v. Utah Const. Co.,* 40 Ida. 659, 690, 237 P. 427.)