706 P.2d 73

**Alden JUDGE and Leota Judge, husband and wife; David A. Whyte and Bernice Whyte, husband and wife; and Sterling L. Evans and Arveen B. Evans, husband and wife, Plaintiffs-Respondents,**

v.

**William LaMar WHYTE and Marie Whyte, husband and wife, Defendants-Appellants.**

**No. 15119.**

Court of Appeals of Idaho.

Aug. 27, 1985.

John Souza, of Whittier & Souza, P.A., Pocatello, for defendants-appellants.

H. William Furchner, Blackfoot, for plaintiffs-respondents.

Before DONALDSON, Acting C.J., and HUNTLEY and OLIVER, Acting JJ.

DONALDSON, Acting Chief Judge.

This is an appeal from a judgment granting plaintiffs-respondents, David Whyte, Sterling Evans and Alden Judge, a prescriptive easement to drain excess irrigation water from their land through the land of

defendant-appellant, William LaMar Whyte. The primary issue on appeal is whether there is substantial and competent evidence to support the finding of a prescriptive easement by the lower court. We affirm this finding. Furthermore, we find that the limitation on the plaintiffs' right to convey their excess irrigation water accumulated as a result of "reasonable and careful irrigation" is an adequate description of the duty imposed on the plaintiffs. We find it necessary to remand to the district court, however, for a determination of the precise location of the drainage ditches after they have entered LaMar Whyte's land.

LaMar Whyte owns a farm in Bingham County, Idaho. To the north lies Sterling Evans' farm; to the east lies Alden Judge's farm; and to the south lies David Whyte's farm (subject to a contract of sale to his son, Chad Whyte). On LaMar Whyte's land is a hollow or low point into which water from the high land to the north, east and south has historically drained. Water from this hollow then naturally drains through the southwest portion of LaMar Whyte's land into Danielson Creek. Until March, 1981, LaMar Whyte used the portion of his land to the east of the hollow for pasturing. In March of 1981 he plowed up the land and planted potatoes. This obliterated the shallow drainage ditches that the plaintiffs allegedly used to drain their land. Plaintiffs then filed this action for a determination that they are owners of a prescriptive easement over LaMar Whyte's land for discharge and conveyance of their excess irrigation water. Plaintiffs further sought an order requiring defendant to restore plaintiffs' drainage ditches and enjoining defendant from obstructing the flow of plaintiffs' excess irrigation water in the future.

It is well settled that an easement for the purpose of draining excess irrigation water across the land of another may be acquired by prescription. *Johnson v. Gustafson*, 49 Idaho 376, 383, 288 P. 427, 430 (1930); *Beasley v. Engstrom*, 31 Idaho 14, 17, 168 P. 1145, 1146 (1918). A pres-

criptive easement over a lower servient landowner's land for the purpose of draining excess irrigation water must be established under a claim of right by proof of open, notorious and adverse use, and must be with the lower landowner's actual or imputed knowledge. *Webster v. Magleby*, 98 Idaho 326, 327, 563 P.2d 50, 51 (1977). *Beasley, supra,* at 17, 168 P. at 1146. The use of the easement by the dominant estate must be continuous for five years and must be made in a reasonable, careful and prudent manner. *Beasley, supra,* at 17, 168 P. at 1146; I.C. § 5-203.

In the present case, the trial court found that Judge has irrigated his land to the east of LaMar Whyte's land for over 20 years. During this time Judge has exercised reasonable care in preventing erosion and excessive run-off from his land. In fact, he employed experts in soil conservation to determine the most efficient and effective method of irrigation. The evidence shows that the water draining from Judge's land entered the eastern border of LaMar Whyte's land through two ditches—the northern ditch enters LaMar Whyte's eastern border approximately 1,156 feet north of the southeast corner of his property, and the southern ditch enters approximately 208 feet north of the southeast corner. Judge periodically cleared the ditches out to prevent accumulation of sod. There is substantial evidence to indicate LaMar Whyte and his predecessor in interest were well aware of Judge's irrigation practices and made no effort to stop the drainage of excess irrigation water prior to the time LaMar Whyte decided he wanted to raise potatoes on the land through which the two ditches ran.

The trial court also found that excess water has drained across LaMar Whyte's southern border from the land owned by David Whyte for over 20 years, and excess water has drained from Sterling Evans' land across LaMar Whyte's northern border for over 20 years. In fact, testimony from Sterling Evans indicates that his father, who originally owned the LaMar

Whyte land, assisted Judge in maintaining the two ditches.

LaMar Whyte complains that even if a prescriptive easement exists over his land, it has since been enlarged by Evans, Judge and David Whyte. It is well established that a right gained by prescription is confined to the right as exercised for the full five-year period required by statute. If the party claiming the prescriptive right enlarges the use, he cannot claim the use as enlarged by him within such time. *Loosli v. Heseman*, 66 Idaho 469, 481, 162 P.2d 393, 399 (1945).

In denying LaMar Whyte's counterclaim, the trial court necessarily found no enlargement in use by any of the plaintiffs. We agree. During the statutory period, both Evans and David Whyte did make some alterations in the way their excess water was released onto LaMar Whyte's land. These changes, however, were primarily made to accomodate changes LaMar Whyte undertook which blocked the natural diffuse drainage pattern along his north and south borders.

As to the quantity of water involved in plaintiffs' easement this Court has stated that the owner of the upper land has a right to divert sufficient water to properly irrigate his land, and the fact that, because of its slope, it requires more than does land which is more nearly level, cannot defeat his right. *Johnson, supra*, at 382–3, 288 P. at 429–30; *Beasley, supra*, at 18, 168 P. at 1146. The evidence demonstrates that all three plaintiffs adopted reasonable methods of irrigation commonly employed in their locality, and the trial court so found. There is no evidence to indicate the quantity of water from the Judge's, Evans' and David Whyte's lands has increased. In fact, draining the excess irrigation water from Evans' and David Whyte's land through the ditches from Judge's land appears to be more beneficial to LaMar Whyte than the previous drainage pattern on his north and south border. LaMar Whyte impliedly acknowledged this fact when he undertook to block the previous drainage on his north and south border.

It would be impractical for the lower court or this Court to set a specific limit on the quantity of excess irrigation water that the plaintiffs may release onto LaMar Whyte's land. That quantity is already limited by each plaintiff's water right and the requirements of the land they currently irrigate. Additionally, the amount of excess irrigation water will vary depending on temperature, type of crop, level of growth, precipitation levels, and other factors relating to soil saturation. We find that the description in the district court's findings which limits the easement to only that amount of excess water which accumulates as a result of reasonable and careful irrigation practices is sufficient. In other words, the plaintiffs as owners of the dominant estates must use reasonably efficient irrigation practices in order to avoid unreasonably burdening the servient estate.

In addition to granting the plaintiffs prescriptive easements across LaMar Whyte's land, the trial court also enjoined LaMar Whyte from in any manner preventing or obstructing these drainage rights. We affirm this injunction as a necessary part of the trial court's judgment.

Although there was considerable evidence in the district court—through testimony and ground and aerial photographs—which indicated the approximate location of the two drainage ditches, the judgment of the district court made reference only to the points on LaMar Whyte's eastern border where the ditches entered. Apparently, the ditches have been destroyed on several occasions by LaMar Whyte's plowing and must be reconstructed annually. We stated in *Kosanke v. Kopp*, 74 Idaho 302, 261 P.2d 815 (1953), that,

"A judgment which affects the title or interest in real property must describe the lands specifically and with such certainty that the court's mandate in connection therewith may be executed, and such that rights and liabilities are clearly

fixed and that all parties affected thereby may readily understand and comply with the requirements thereof." *Id.* at 307, 261 P.2d at 818; *Sinnett v. Werelus,* 83 Idaho 514, 524, 365 P.2d 952, 957 (1961).

To forestall future conflict on the precise location of the ditches, we remand to the district court for determination of the location and course of the ditches from the point where they enter LaMar Whyte's land to where they join and thence drain in a southwesterly direction into Danielson Creek.

Affirmed in part and remanded in part.

Costs to respondent.

No attorney fees on appeal.

HUNTLEY and OLIVER, Acting JJ., concur.