95 P.3d 57

Don and Luaina BROWN, Plaintiffs–
Respondents–Cross Appellants,

v.

Marvin G. and Lynette MILLER, and
Josh and Nicole Robson, Defendants–
Appellants–Cross Respondents.

No. 29390.

Supreme Court of Idaho,
Boise, April 2004 Term.

July 8, 2004.

**440**

Dunn & Clark Law Office, Rigby, for Appellants. Robin D. Dunn argued.

Just Law Offices and Manwaring Law Office, Idaho Falls, for Respondents. Kipp L. Manwaring argued.

TROUT, Chief Justice.

Appellants Josh and Nicole Robson (the Robsons) and Marvin and Lynette Miller (the Millers) appeal from the district judge's determination that there is an easement by necessity and by prescription crossing over their respective properties, providing access to property owned by Don and Luaina Brown (the Browns). This Court affirms the trial court's decision on easement by necessity, but remands the case for further proceedings.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Prior to 1949, all of the property involved in this case, approximately 640 acres located in Jefferson County, Idaho (the Property), was owned by Emery L. and Mary E. Hubbard (the Hubbards). When the Hubbards owned the Property, Earl and Ada Morgan (the Morgans) lived in a log home on the eastern side of the Property and accessed the residence by way of a quarter-mile long road (the Road) running from a county road on the western boundary of the Property to the log home on the eastern side of the Property. In 1949, the Hubbards conveyed a 1.38–acre portion of the Property immediately adjacent

to the county road to Earl Brown, along with another 320–acre parcel on the eastern side of the Property, encompassing the log home previously occupied by the Morgans. Earl Brown had a home on the 1.38–acre parcel, farmed the larger parcel and used the log home located on the larger parcel as a residence for his employees, Donald and Gwen Ferragher (the Ferraghers). The Ferraghers, Earl Brown's son and his wife (the Browns) and another couple all lived at various times between the early 1950's and 1983 on the larger parcel on the eastern side of the Property and used the Road to access their home.

In 1977, Von Hardy purchased the remaining parcel of approximately 319 acres from the Hubbards. The Millers purchased their parcel on the north side of the Road from Von Hardy in 1987 and the Robsons purchased their parcel on the south side of the Road (and including the Road on most of their property) from Von Hardy in 2001. The Browns inherited the 1.38 acres and the larger parcel from Earl Brown after his death in 1996. The Browns built a residence on the site of the log home on the larger parcel in 1998. Before building the residence, the Browns obtained a building permit after advising the county there was a 60–foot wide easement for the Road. The Millers and Robsons contend that during construction of the Browns' home, the Browns widened the road from 9 feet to 13 feet, and that the Millers and Robsons objected to the Browns placing utilities under the road.

In October 2000, the Millers and Robsons sent a letter to the Browns indicating that the road had only been used for agricultural use, and any other use, i.e. ingress and egress to the Browns' residence, would be by permission only. On August 8, 2001, the Browns brought this action against the Millers and Robsons to establish that an easement existed giving the Browns the right use the Road to access their residence. The Millers and Robsons defended, arguing the Road has only been used for farming and recreational purposes and any other uses were by permission only.

The Browns filed a summary judgment motion on their claims of a prescriptive ease-

ment, an implied easement by prior use, and an implied easement by necessity to access their residence and for agricultural and recreational use. The Millers and Robsons filed their own motion for summary judgment, claiming that any previous residential use was abandoned between 1983 and 1998. The Millers and Robsons also argued the Browns may only use the road for agricultural and recreational purposes and may not improve the road or place utilities near the road.

After a hearing, the district judge found in an Order dated September 19, 2002, that the Browns successfully established they had an implied easement by necessity to access a single family residence and the judge fixed the easement at thirteen feet in width. The district judge also found the easement by necessity included access to place the utilities underground to service a single family home.

As to the claim of a prescriptive easement, it was uncontroverted that such an easement had been established for agricultural and recreational use. The district judge declined to grant summary judgment on the issues of whether an implied easement by prior use or an easement by prescription existed for residential use because "the facts are in dispute and the record lacks crucial evidence" as to the number of years the Road had been continuously used to access a residence, the width of the Road and whether its use was by permission.

The Browns then filed a motion to reconsider and amend the judgment, which the district judge granted in an Order on Reconsideration dated January 10, 2003. While the district judge appears to have reaffirmed his earlier determination that the record supported an easement by necessity, he amended the earlier decision by finding no disputed facts as to the existence of a prescriptive easement or the proper width for that easement. The district judge then determined that the maintained portion of the Road would not exceed thirteen feet, but the easement by prescription for agriculture and recreational use extended an additional six feet north and six feet south from the edge of the maintained road, for a total of twenty-five feet. This extended portion was to accom-

modate snow removal, farm equipment, and vehicle passage. Finally the district judge found the Browns had established a prescriptive easement on the existing Road for agricultural and recreational purposes and to access their home for residential purposes. He found any issues as to expansion of use of the easement or improvements to it, to be "not ripe for resolution." The district judge denied the Browns' request for attorney fees.

The Millers and Robsons appeal the decision granting the easement and the Browns cross-appeal the denial of attorney fees.

## II.

### STANDARD OF REVIEW

■■■ This Court's review of a district court's ruling on a motion for summary judgment is the same as that required of the trial court when ruling on the motion. *City of Sandpoint v. Sandpoint Independent Highway District*, 139 Idaho 65, 72 P.3d 905, 907 (2003); *Sun Valley v. Rosholt, Robertson & Tucker*, 133 Idaho 1, 3, 981 P.2d 236, 238 (1999). On appeal, this Court exercises free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App.1986). The law is well established in Idaho that on a motion for summary judgment, the trial court must determine whether the pleadings, depositions, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); 56(c); *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991).

## III.

### DISCUSSION

#### A. Easement by necessity.

1. *For single family residence*

At the outset, it is important to establish which issues were resolved by the district judge's two orders. It appears the Order on Reconsideration of January 10 reaffirmed the district judge's earlier determination that an easement by necessity had been established to permit the Browns' access to their residence and for utilities. There is no indication that the judge intended to change that in any way on reconsideration. What is not clear is how the facts, which were delineated in the September 19 Order as "disputed facts," later became undisputed, supporting entry of an order finding a prescriptive easement and establishing the width of that easement. Because the January 10 Order on Reconsideration appears to be a final and appealable decision resolving all issues presented by the parties' motions, we will address the matters resolved therein.

In *Cordwell v. Smith*, 105 Idaho 71, 665 P.2d 1081 (Ct.App.1983), the Court of Appeals set forth the requirements for an easement by necessity in cases where the owner of land conveys part thereof to another, and the part conveyed is without ingress or egress except over the lands retained. In such instances, the party seeking the easement by necessity must prove: 1) their residential property was once part of a larger tract held under one ownership prior to division of the tract; 2) that a necessity for the road existed at the time of severance; and 3) that the present necessity for the road is great. *Id.* at 78, 665 P.2d at 1088–89. In the September 19 Order, the district judge determined that all of the Property was owned by the Hubbards and in 1949, the Hubbards divided the land by selling the 1.38 acre and the 320 acre parcels to Earl Brown. The district judge then found it uncontroverted that at the time of severance, a log home existed on the 320–acre parcel which was being used by the Morgans, and a necessity for the Road existed at the time the Hubbards sold the property. Finally, the district judge determined that the Browns do not have any other reasonable means of accessing their property.

■■■ On appeal, the Millers and Robsons challenge only the third factor, that is: whether the easement is necessary to the proper enjoyment of the Browns' property. The Millers and Robsons argue an easement by necessity assumes that no roadway exists and because a roadway exists in this case,

there is no necessity for a road or an easement thereon.

The Millers' and Robsons' arguments disregard the language of *Cordwell* where the Court of Appeals stated that an easement by necessity "arises strictly from necessity and does not depend upon the prior existence of a roadway in apparent continuous use" and "it is, literally, a creature of necessity." *Id.* The Browns established that the only way into their residential property from the public road is by the quarter-mile Road over the Millers' and Robsons' land, and the Millers and Robsons did not present evidence otherwise. As a result, it appears that an easement by necessity for residential purposes exists and there is no disputed material issue of fact. The district judge did not err in granting summary judgment on that issue.

The district judge also determined that, despite the disputed issue relating to the width of the road, a reasonable width to provide the Browns' their necessary access was thirteen feet. This appears to be a material disputed issue of fact, not appropriate for resolution on summary judgment; however, the width of the Road will be discussed further in the section dealing with prescriptive easements.

### 2. *For underground utility access*

■ The district judge, relying again on *Cordwell*, concluded that "it is only logical than an easement by necessity also includes utilities, only so long as the necessity lasts" and "[A] necessity to use the road for agricultural and residential utilities existed at the time of the severance and the present necessity to use the road for utilities is great." The district judge limited the utility easement to a single family residence. The Millers and Robsons contend that a utility easement by necessity does not exist because the easement by necessity does not exist. As discussed above, the easement by necessity does exist and under *Cordwell*, such an easement reasonably includes utilities for a single family residence. The district judge's decision is affirmed.

### B. Easement by prescription

In *Wood v. Hoglund*, 131 Idaho 700, 702, 963 P.2d 383, 385 (1998), this Court set forth the requirements for a prescriptive easement:

To acquire a prescriptive easement in Idaho, a claimant must present reasonably clear and convincing evidence of open, notorious, continuous, uninterrupted use, under claim of right, with the knowledge of the owner of the servient estate for the prescriptive period of five years. I.C. § 5–203. A prescriptive right cannot be obtained if the use of the servient estate is by permission of the landowner. *State ex rel Haman v. Fox*, 100 Idaho 140, 594 P.2d 1093 (1979). Proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, without evidence as to how the use began, raises the presumption that the use was adverse and under claim of right. *West v. Smith*, 95 Idaho at 557, 511 P.2d at 1333. The burden is then on the owner of the servient estate to show that the use was permissive, or by virtue of a license, contract or agreement. *Id.*

■ While in the September 19 decision the district judge determined he could not rule on the existence of a prescriptive easement because the evidence was disputed or insufficient, on reconsideration, he found that a prescriptive easement for agricultural and recreational use was established and, indeed, the Millers and Robsons do not dispute this. Without explaining why this is no longer a disputed fact, the judge stated: "The road has been primarily used for agricultural and recreational purposes but has also been used to access residences located on the Plaintiffs' property at *intermittent times*, and the Browns currently use the road as the only access to their home." (emphasis added). The district judge then found that using the road to access a residence falls within the historic uses of the road and "does not unduly expand the prescriptive use of the road for agricultural and recreation purposes."

The Millers and Robsons argue that the district judge could not find a prescriptive easement for residential use exists based on the record because none of the Browns' pre-

decessors used the Road for residential purposes for more than five continuous years and because any residential use over five years was permissive. The Browns respond that the Road had been in existence and used for more than five continuous years for agricultural and recreational purposes and, therefore, it should also support residential uses because periodically during the prescriptive period it was also used to access a house. There is no Idaho law for this proposition and indeed the cases are to the contrary. In *Loosli v. Heseman*, 66 Idaho 469, 481, 162 P.2d 393, 398 (1945) we ruled:

> The right gained by prescription is always confined to the right as exercised for the full period of time required by the statute, which is, in this state, five years. A party claiming a prescriptive right for five years, who, within that time, enlarges the use, cannot, at the end of that time, claim the use as enlarged within that period.

*See also Hodgins v. Sales*, 139 Idaho 225, 229, 76 P.3d 969, 973 (2003).

The district judge also determined on reconsideration that the historic uses of the prescriptive easement would support expanding the width of the Road from thirteen feet, which he found for the easement by necessity, to twenty-five feet to permit snow removal, farm equipment access and vehicle passage. According to the evidence presented, the Browns graded and widened the Road from nine feet to thirteen feet in 1998 and have since used the road for ingress and egress. In addition, the Road is lined by a fence on either side. Initially, the Browns claimed a sixty-foot easement for the Road; however, at summary judgment and in their affidavits the Browns contended that the space between the fences on each side of the Road is a total of thirty feet.

Conversely, the Millers and Robsons contend that nine feet is sufficient for vehicle passage and, because they objected to the widening of the lane during construction of the Browns' home, the district judge erred in establishing even thirteen feet as reasonable access. The Millers and Robsons point out that the district judge did not have a legal description of the Road and did not have sufficient evidence of how wide the Road

was. In addition, the Millers and Robsons testified in affidavits that the entire space between the fences is only fifteen feet.

It appears that the parties are not in agreement about the width of the road historically, nor is there any unanimity about the necessary width should a prescriptive easement be proven. Even the district judge mentioned that he did not know exactly the distance between the fence lines. Because the district judge was presented with disputed evidence on the material issue of the reasonable width of the easement, he erred in determining it should be set at twenty-five feet.

We find there are disputed issues of fact as to whether the road was used for residential purposes continuously for the prescriptive period and what width the easement should be and therefore we reverse the decision of the district judge and remand the case for presentation of further evidence.

## C. Future uses of the road

■ The district judge initially limited the easement by necessity to the previously maintained road width and solely for purposes of a single family dwelling and accompanying utilities, and then limited the prescriptive easement to historic agricultural, recreational and residential use. In response to the Millers' and Robsons' request to limit the Browns' use to only one residence, the district judge indicated the issue was not "ripe for resolution on the current state of the record" because "the record contains nothing more than suppositions that Plaintiffs seek to expand the easement beyond historical use, and should Plaintiffs seek to expand current use the Defendants may seek injunctive relief for an 'impermissible expansion of the easement herein recognized.'"

On appeal, the Millers and Robsons contend the district judge failed to fully address all issues presented by them, including whether the Browns can subdivide their property to permit multiple residences. The Millers and Robsons argue the affidavit of the Browns' engineer shows the proposed expansion and design the Browns are seek-

ing. In looking at the engineer's affidavit, there is no indication the Browns intend to create multiple family residences on the 320–acre parcel or to expand their use of the road. Therefore, the district judge correctly refused to decide the issue because at this point, the Browns have not sought to expand their use.

### D. Improvements to the road

■ Initially, the district judge stated he would not allow the road to be improved by paving or graveling. However, in the Order on Reconsideration, he indicated he would "not attempt to define what improvements may or may not be allowable in the future" because "[N]o specific request has been made to delineate or limit improvements ... and the court will not speculate with either party in that regard." On appeal, the Millers and Robsons argue this issue was raised and they ask this Court for direction.

■ We agree the district judge did not need to give an advisory opinion to define what improvements to the Road may be allowed in the future. The district judge suggested that the rights of the dominant and servient estates would be determined in the future "in accord with the law of this state." That law currently provides that it is incumbent upon the dominant estate owner to reasonably maintain the easement. "Generally, the responsibility for maintaining an easement falls on those who use the easement for access to property. *See* 25 AM. JUR. 2D Easements § 98 (1996); (A servient owner has no duty to maintain or repair an easement)." *Stafford v. Klosterman*, 134 Idaho 205, 207, 998 P.2d 1118, 1120 (2000). If further clarification is necessary in the future, the parties can raise the issue. The decision of the district judge is affirmed.

### E. The Browns' attorney fees and costs.

■ The decision to deny an award of attorney fees rests in the discretion of the trial court, and the burden is on the party disputing the trial court's determination to show an abuse of discretion. *Nampa & Meridian Irr. Dist. v. Washington Federal Sav.*, 135 Idaho 518, 524–25, 20 P.3d 702, 708–09 (2001). To determine whether the trial court

abused its discretion, this Court considers: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

The Browns requested attorney fees below pursuant to I.C. §§ 12–120 and 12–121, and I.R.C.P. 68. The district judge refused to award fees because the facts in the record did not support a statutory basis for an award of fees and "neither party has totally prevailed in this action...." The Browns appeal the decision.

1. *The Browns are not entitled to attorney fees under I.C. § 12–120.*

■ Idaho Code § 12–120 provides that attorney fees shall be awarded in any civil action "to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the sale of goods ....and in any commercial transaction ...," where the amount pled is less than $25,000. Because this case involves an easement, there is no basis for an award of fees under this statute and the district judge correctly denied the Browns' request.

2. *The Browns are not entitled to attorney fees under I.C. § 12–121 or I.R.C.P. 68.*

■ The Browns also sought attorney fees under I.C. § 12–121 as prevailing parties in a civil action. I.C. § 12–121 provides: "In any civil action, the judge may award reasonable attorney fees to the prevailing party or parties ..." The permissive language gives the trial court broad discretionary authority, but I.R.C.P. 54(e)(1) further limits a trial court's discretion by allowing an award of fees only if the trial court "finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation." The district judge correctly determined that neither party prevailed and therefore, did not abuse his discretion in determining the Browns were not entitled to fees.

The Browns also argue the district judge should have awarded them attorney fees based upon I.R.C.P. 68. Rule 68 provides that "a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, which offer of judgment shall be deemed to include ... any attorney fees awardable under Rule 54(e)(1) and any costs awardable under Rule 54(d)(1)."

The Browns submitted a "settlement proposal", not an offer of judgment, to resolve the easement dispute and the Millers and Robsons rejected that settlement proposal. Nothing in the language of the letter offering a proposal to resolve the dispute would meet the requirements of Rule 68, even assuming there was a statutory basis for awarding fees. Thus, the district judge did not err in denying attorney fees on that basis either.

### F. Attorney fees on appeal

The Browns also claim attorney fees on appeal. Because we are reversing the decision of the district judge in part and remanding this for further proceedings, there is no basis for an award of fees to the Browns.

## IV.

### CONCLUSION

The decision of the district judge finding an easement by necessity so the Browns can access their property for a single family residence and to supply utilities is affirmed. The portion of the decision finding a prescriptive easement and setting the parameters of that easement is reversed and remanded for further proceedings. The district judge correctly declined to opine on future use of the Road for multiple family dwellings or how the Road should be maintained. We award no attorney fees or costs on appeal.

Justices SCHROEDER, KIDWELL, EISMANN and BURDICK concur.