## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 33473

M. DALE BECKSTEAD and GAYLE )
BECKSTEAD, husband and wife, )
                                     )
  Plaintiffs-Counterdefendants- Respondents, )       Pocatello, April 2008 Term
                                       )
 v.                                       )       2008 Opinion No. 84
                                       )
BLAINE PRICE, JOANN PRICE, LAZY E., )       Filed: June 17, 2008
LLC, an Idaho limited liability company, and )
JOHN DOES 1-10,                    )       Stephen W. Kenyon, Clerk
                                       )
  Defendants-Counterclaimants-Appellants. )
                                       )

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Oneida County. Hon. Don L. Harding, District Judge.

District court order on prescriptive easement, <u>affirmed</u> in part, <u>vacated</u> in part and <u>remanded.</u>

Lowell N. Hawkes, Chtd., Pocatello, for appellants. Lowell N. Hawkes and Ryan Scott Lewis argued.

Maguire & Kress, Pocatello, for respondents. David R. Kress and Matthew Luke Kinghorn argued.

---

BURDICK, Justice

      Appellants Blaine Price, JoAnn Price, Lazy E., LLC, and John Does 1-10 (collectively the Prices) appeal a district court order which decrees the existence of a prescriptive easement over their land in favor of Respondents M. Dale and Gayle Beckstead. On appeal, the Prices raise several issues including whether the district court erroneously concluded the Becksteads have a prescriptive easement, whether the determination of the scope of the easement was erroneous, and whether the Prices' right to due process was violated. We affirm in part, vacate in part, and remand.

### I. FACTUAL AND PROCEDURAL BACKGROUND

      The Becksteads own approximately 760 acres of land (the Beckstead Property) in Oneida County. The Becksteads purchased the Beckstead Property in 1996. The Prices own two parcels

1

of property: the Price Property and the Frederickson Property. Off of the paved highway, there is a road that runs across the Price Property and the Frederickson Property and then connects to the Beckstead Property. The road is not a driveway, but leads to a fork in the road that turns right into the driveway going to the Prices' residence or left up to the Beckstead Property.

The Becksteads and the Prices had a friendly relationship until about 2001. After some contentious encounters and trouble with gates that the Prices placed on the road, the Becksteads initiated a quiet title suit. After a three-day court trial, the district court ruled the Becksteads met the prescriptive easement requirements. The Prices appeal.

## II. STANDARD OF REVIEW

A determination that a claimant has established a prescriptive easement involves entwined questions of law and fact. *Hughes v. Fisher*, 142 Idaho 474, 479, 129 P.3d 1223, 1228 (2006). When this Court reviews a lower court's decision, it determines whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Anderson v. Larsen*, 136 Idaho 402, 405, 34 P.3d 1085, 1088 (2001). "A trial court's findings of fact in a bench trial will be liberally construed on appeal in favor of the judgment entered, in view of the trial court's role as trier of fact." *Id.* Findings of fact based on substantial and competent evidence will not be overturned on appeal even in the face of conflicting evidence. *Benninger v. Derifield*, 142 Idaho 486, 489, 129 P.3d 1235, 1238 (2006). It is the province of the district court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. *Id.*

"[W]e exercise free review over the lower court's conclusion of law to determine whether the trial court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found." *Anderson*, 136 Idaho at 406, 34 P.3d at 1089.

## III. ANALYSIS

The Prices argue that the Becksteads failed to establish they acquired a prescriptive easement and that the scope of the easement granted is excessive. The Prices also argue the district court erred by failing to award them contribution and by ordering the locking and removal of various gates. The Prices further argue they were denied due process and that the district court entered an erroneous order when considering the Becksteads' second contempt motion. Both parties assert they are entitled to an award of attorney fees on appeal. We address each issue in turn.

## A. Existence of the Prescriptive Easement

After the district court's grant of summary judgment to the Becksteads, the Prices moved for reconsideration. The district court decided it would consider the information submitted during the trial before ruling on the motion for reconsideration. After the three-day court trial, the court made written factual findings and concluded as a matter of law that based on those findings, the Becksteads had a prescriptive easement. The Prices contend the facts do not support a conclusion that the Becksteads have established any of the prescriptive easement elements.

The requirements for a prescriptive easement have been clearly established in Idaho:

> A party seeking to establish the existence of an easement by prescription "must prove by clear and convincing evidence use of the subject property, which is characterized as: (1) open and notorious; (2) continuous and uninterrupted; (3) adverse and under a claim of right; (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period." *Hodgins v. Sales,* 139 Idaho 225, 229, 76 P.3d 969, 973 (2003). The statutory period in question is five years. I.C. § 5-203; *Weaver v. Stafford,* 134 Idaho 691, 698, 8 P.3d 1234, 1241 (2000). A claimant may rely on his own use, or he "may rely on the adverse use by the claimant's predecessor for the prescriptive period, or the claimant may combine such predecessor's use with the claimant's own use to establish the requisite five continuous years of adverse use." *Hodgins,* 139 Idaho at 230, 76 P.3d at 974. Once the claimant presents proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, even without evidence of how the use began, he raises the presumption that the use was adverse and under a claim of right. *Wood v. Hoglund,* 131 Idaho 700, 702-03, 963 P.2d 383, 385-86 (1998); *Marshall v. Blair,* 130 Idaho 675, 680, 946 P.2d 975, 980 (1997). The burden then shifts to the owner of the servient tenement to show that the claimant's use was permissive, or by virtue of a license, contract, or agreement. *Wood,* 131 Idaho at 703, 963 P.2d at 386; *Marshall,* 130 Idaho at 680, 946 P.2d at 980. The nature of the use is adverse if "it runs contrary to the servient owner's claims to the property." *Hodgins,* 139 Idaho at 231, 76 P.3d at 975. The state of mind of the users of the alleged easement is not controlling; the focus is on the nature of their use. *Id.* at 231-32, 76 P.3d at 975-76.

*Akers v. D.L. White Constr., Inc.*, 142 Idaho 293, 303, 127 P.3d 196, 206 (2005). "A prescriptive right cannot be obtained if the use of the servient estate is by permission of the landowner." *Brown v. Miller*, 140 Idaho 439, 443, 95 P.3d 57, 61 (2004) (quoting *Wood*, 131 Idaho at 702, 963 P.2d at 385).

The Prices assert the district court should have only considered the continuous and uninterrupted use of the roadway by Dale Beckstead; the Prices argue Gayle is not an owner of the property and that her use or the use of any other nonowners cannot be used to establish the

3

prescriptive easement. However, this argument ignores the extensive body of Idaho law that considers various users of the easement to the degree they show the easement was being used by the landowner. *See, e.g.*, *Benninger*, 142 Idaho at 490, 129 P.3d at 1239 (use by visitors and emergency service providers); *Anderson*, 136 Idaho at 406, 34 P.3d at 1089 (use by neighbor and his grandson, who were hired to cut grass on the property).

An easement "is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Luce v. Marble*, 142 Idaho 264, 273, 127 P.3d 167, 176 (2005) (quoting *Abbott v. Nampa Sch. Dist. No. 131*, 119 Idaho 544, 548, 808 P.2d 1289, 1293 (1991)) (internal quotations omitted). The district court found the Becksteads used the land for recreational purposes, for grazing cattle, and for making improvements to the Beckstead Property. Those types of uses will naturally include ingress and egress for visitors and people hired to perform work on the property. Thus, the district court did not err by considering the use of nonowners to the degree those nonowners showed use of the easement by the landowner.

The district court found that the Becksteads continuously used the property each year from 1996 through 2005, that the Becksteads at no time sought permission to use the road, and that nearly all the use of the road can be observed from the Prices' residence. It is the province of the district court to weigh conflicting evidence and testimony and to judge the credibility of the witnesses. *Benninger*, 142 Idaho at 489, 129 P.3d at 1238. Here, the judge's weighing of evidence and judgment on the credibility of the witnesses resulted in a favorable judgment for the Becksteads. Though the Prices presented conflicting evidence, there is trial testimony that sufficiently supports the district court's findings. Therefore, we hold the district court's factual findings were supported by substantial and competent evidence. Next, we must determine whether the factual findings support the conclusions of law.

The district court concluded the Becksteads established they had a prescriptive easement "for the purpose of ingress and egress to the Beckstead Property." "A party seeking to establish the existence of an easement by prescription 'must prove by clear and convincing evidence use of the subject property, which is characterized as: (1) open and notorious; (2) continuous and uninterrupted; (3) adverse and under a claim of right; (4) with the actual or imputed knowledge of the owner of the servient tenement (5) for the statutory period.'" *Akers*, 142 Idaho at 303, 127 P.3d at 206 (quoting *Hodgins,* 139 Idaho at 229, 76 P.3d at 973).

4

The factual findings support a conclusion that the Becksteads' use of the road was open and notorious, continuous and uninterrupted,[1] with the actual knowledge of the Prices, and for the statutory period. Thus, the Becksteads raised the presumption their use was adverse. *See id.* The burden then shifted to the Prices to show that the Becksteads' use was permissive, or by virtue of a license, contract, or agreement. *See id*. (citing *Wood,* 131 Idaho at 703, 963 P.2d at 386; *Marshall,* 130 Idaho at 680, 946 P.2d at 980). The district court determined the Prices failed to present any "credible evidence that any person ever obtained or received permission from [the Prices] . . . ." It was for the district court to determine the credibility of the witnesses, *Benninger*, 142 Idaho at 489, 129 P.3d at 1238, and there is substantial and competent evidence in the record to support a determination that the Becksteads never asked for nor received permission to use the road. The factual findings by the district court sufficiently support its conclusion that the Becksteads acquired a prescriptive easement.

The Prices nonetheless put forth other theories to support their contention that the Becksteads did not show their use was adverse and under a claim of right.

1. The *Hunter* Rule

First, the Prices argue there was evidence the Becksteads' predecessors used the road by permission. The Prices assert once there is permissive use, the use continues to be presumed permissive unless there is unequivocal conduct which gives the servient estate owner notice of hostile and adverse use and cite to *Hunter v. Shields*, 131 Idaho 148, 152, 953 P.2d 588, 592 (1998). We need not get to *Hunter* because here there was no evidence the Becksteads' predecessors used the road by permission.

Shirlee Ward and her husband (the Wards) owned the Beckstead Property from 1980 to 1996. The Wards accessed the Beckstead Property from 1980 to 1985 without any leased interest on land surrounding the Beckstead Property and without asking or receiving permission. Between 1985 and the early 1990s the Wards leased the Price Property; the Wards never leased the Frederickson Property. The Wards stopped leasing the Price Property in 1993 but continued to access the Beckstead Property.

---

[1] The Prices claim because the Becksteads' use was only seasonal, it was not continuous and uninterrupted. First, the cases cited by the Prices do not support their contention because they are factually dissimilar. *See Brown,* 140 Idaho at 443, 95 P.3d at 61; *Anderson*, 136 Idaho at 406, 34 P.3d at 1089. Second, it is generally accepted that the "continuous and uninterrupted" element does not require daily use or even monthly use. 25 Am. Jur. 2d *Easements*

Thus, there is evidence that during the time of the lease, the Wards had permission to use the road to access the Price Property. However, prior to the lease, during the lease, and after the lease, the Wards also owned the Beckstead Property and used the road to access that parcel of land. There is no evidence showing the lease of the Price Property gave them permission to use the road to access the Beckstead Property. Nor was there evidence that the road running through the Price Property and the Frederickson Property was ever used permissively to access the Beckstead Property. There is only evidence that there was permission to use the road to access the Price Property, and here the Price Property is not the dominant estate. Hence, this evidence does not show the claimant's use was permissive.

2. Use in Common

Second, the Prices argue that the Becksteads' use was merely in common with the Prices and thus, a permissive use presumption arises rather than an adverse use presumption. In Idaho, the adverse use presumption has been rebutted by evidence of "use of a driveway in common with the owner and the general public, in the absence of some decisive act on the user's part indicating a separate and exclusive use . . . ." *Marshall*, 130 Idaho at 680, 946 P.2d at 980 (quoting *Simmons v. Perkins*, 63 Idaho 136, 144, 118 P.2d 740, 744 (1941)) (emphasis removed); *see also Hughes v. Fisher*, 142 Idaho 474, 481, 129 P.3d 1223, 1230 (2006).

A second exception to the adverse use presumption has been applied in Idaho: when "a landowner 'constructs a way over [the land] for his own use and convenience, the mere use thereof by others which in no way interferes with his use will be presumed to be by way of . . . permission.'" *Hughes*, 142 Idaho at 481, 129 P.3d at 1230 (quoting *Simmons*, 63 Idaho at 144, 118 P.2d at 744) (alteration in original). In *Hughes*, the parties cited these exceptions and argued over whether the presumptions applied, whether the burdens shifted, and whether the latter exception applies when the owner did not construct the way over the land. *Id*. This Court held those two rules were simply an approach to determining whether the claimant had met the elements for a prescriptive easement by clear and convincing evidence. *Id*. The Court stated a desire to "disentangle Idaho prescriptive easement law" and "emphasize[d] the need for courts to streamline their analysis by focusing simply on whether the five prescriptive easement elements have been satisfied based on the facts before them." *Id*. Here, the district court found that the

*and Licenses* § 61 (2004). The acquisition of a prescriptive easement requires continuous use "according to the nature of the use and the needs of the claimant." *Id*.

6

Becksteads did not seek or obtain permission from the Prices to use the road and that the Prices recognized the Becksteads' right to use the road. There was evidence the Becksteads' use of the road was adverse and under a claim of right. To the degree there was conflicting evidence, it was the province of the district court to weigh that evidence. *Benninger*, 142 Idaho at 489, 129 P.3d at 1238. The district court's findings are supported by substantial and competent evidence.

Therefore, we hold the district court correctly concluded based on the facts before it that the Becksteads met all of the prescriptive easement elements, and we affirm the district court's conclusion that the Becksteads have a prescriptive easement.[2]

**B. Scope of the Easement**

The Prices argue the scope of the easement is excessive as to uses and number of people. The Prices argue the easement does not cover the use of certain types of vehicles, that the easement does not extend to people invited by the Becksteads to the Beckstead Property, and that Gayle Beckstead does not own the property and thus, cannot have a prescriptive easement.

Recognizing that "[p]rescription acts as a penalty against a landowner[,]" this Court has stated prescriptive rights "should be closely scrutinized and limited by the courts." *Gibbens v. Weisshaupt*, 98 Idaho 633, 638, 570 P.2d 870, 875 (1977). The scope of a prescriptive easement is fixed by the use made during the prescriptive period. *Elder v. Northwest Timber Co.*, 101 Idaho 356, 359, 613 P.2d 367, 370 (1980); *Gibbens*, 98 Idaho at 638, 570 P.2d at 875 (quoting *Bartholomew v. Staheli*, 195 P.2d 824, 829 (Cal. Dist. Ct. App. 1948)). The holder of the prescriptive easement "may not use it to impose a substantial increase or change of burden on the servient tenement." *Gibbens*, 98 Idaho at 638, 570 P.2d at 875 (quoting *Bartholomew*, 195 P.2d at 829).

As to use, the Prices assert that during the prescriptive period there was no continuous use of the various means of transportation named in the Becksteads' complaint: trucks, campers, livestock trailers, four-wheelers, pedestrian traffic, and heavy equipment needed to improve the

---

[2] Thus, it is unnecessary to decide whether the district court's grant of summary judgment to the Becksteads was procedurally proper. Below, the court granted summary judgment to the Becksteads as to the existence of the prescriptive easement. However, after the Prices' motion to reconsider, the court allowed the issue to go to trial and, based on findings made after the trial, the district court concluded the Becksteads established the existence of a prescriptive easement. We affirm the decision the district court made after the trial; consequently, the issue of whether summary judgment was procedurally proper is moot. *See Webb v. Webb*, 143 Idaho 521, 524, 148 P.3d 1267, 1270 (2006) (holding an issue is moot when a favorable judicial decision would not result in any relief).

Beckstead Property. In the past, this Court has not required the scope of the easement specify particular vehicles or types of vehicles that can use the easement; rather, we have characterized easement uses as residential, agricultural, or recreational. *See Brown*, 140 Idaho at 443-44, 95 P.3d at 61-62. Thus, the scope of the easement should include any reasonable means of transportation for the character of use made during the prescriptive period.

The district court found the Becksteads used the easement during the prescriptive period for recreational purposes, for grazing purposes, and for making improvements to the Beckstead Property. This conclusion is supported by substantial and competent evidence in the record. Though the district court gave specific examples of which vehicles might use the road for the purposes of recreation, grazing cattle, and making improvements, it did not express an intention to limit the scope to those means of travel. We affirm the district court's finding that the easement can be used for recreational purposes, grazing purposes, and for making improvements. Furthermore, we clarify that the use of the easement is not limited to any specific vehicles or types of vehicles and that the easement covers the use of any vehicles that would reasonably be used to access the Beckstead Property for egress and ingress, recreating, grazing cattle, or making improvements.

As to number of people, the Prices argue the district court erred by stating the easement "extends to all of the Plaintiffs [sic] invitees . . . ."[3] Instead, the Prices believe the district court should have ordered the Becksteads to give the names of everyone that will visit the Beckstead Property.

There is a difference between easements appurtenant and easements in gross. *West v. Smith*, 95 Idaho 550, 556, 511 P.2d 1326, 1332 (1973). An easement appurtenant is attached to a dominant tenement. *Id.* A person does not hold an easement in gross by virtue of ownership in a particular parcel of land; rather, an easement in gross is a personal right to use the land of another. *Id.* An easement in gross is not assignable and applies to specific people and not to guests or assignees. *Id.* Contrarily, an easement appurtenant "serves the owner of the dominant estate in a way that cannot be separated from his rights in the land." *Hodgins*, 139 Idaho at 230,

---

[3] A review of the trial transcript shows that "invitee" was used broadly by the district court and the parties throughout trial to indicate any person the Becksteads invite to their property, whether to perform work or as a social guest. Therefore, the easement extends to guests of the Becksteads coming to the property for recreational purposes, grazing purposes, or to improve the property, and it is unnecessary to remand in order to determine whether the easement applies to invitees and licensees as defined by law.

76 P.3d at 974. When such an easement is created, "it becomes fixed as an appurtenance to the real property, which is subject to the prescriptive use and may be claimed by a successor in interest." *Id*. "In cases of doubt, Idaho courts presume the easement is appurtenant." *Id*.

Here, the easement the Becksteads acquired is not personal but is an easement appurtenant that serves the owner of the dominant estate in a way that cannot be separated from his rights in the land—it provides access to the Beckstead Property. Therefore, it is not necessary that the district court name specific people who can use the roadway to access the Beckstead Property. The quantity of people using the easement to access the Beckstead Property is not limited by names of people, but is limited by the scope of the easement. To the degree the use of the easement may begin to exceed the use made during the prescriptive period, the parties can then litigate whether there has been an unlawful increase in the use of the easement. As described in the district court's order, the declared scope of the easement does not exceed the use made during the prescriptive period.

Therefore, it is not necessary that the district court name the individuals that will use the easement, nor is it necessary that this Court "reverse the prescriptive easement granted to Gayle Beckstead." The evidence the Becksteads presented established a prescriptive easement; the prescriptive easement is appurtenant to the Beckstead Property and, thus, is attached to the land and not to individuals.[4]

Nonetheless, because the district court did not set out the width and length of the easement, we remand the case back to the district court. "[I]t is well settled under Idaho law that any judgment determining the existence of an easement must also specify the character, width, length and location of the easement. This Court does not hesitate to remand cases because of an inadequacy in the district court's description of an easement." *Schneider v. Howe*, 142 Idaho 767, 774, 133 P.3d 1232, 1239 (2006) (internal citations omitted). On remand it will not be necessary for the district court to specify the character of the easement, since it has already done so. The determination of the width and length of the easement should take into account the factual findings already made by the district court as those findings are supported by substantial and competent evidence. Those findings include that during the prescriptive period the

---

[4] Moreover, regardless of whether Gayle is an actual owner of the Beckstead Property, we note that Dale clearly owns the land and, thus, had standing to bring the quiet title suit. *See Tungsten Holdings Inc., v. Drake*, 143 Idaho

9

Becksteads used the easement for trucks, camper trailers, livestock trailers, four-wheelers, and transportation of necessary equipment and materials to make improvements on the Beckstead Property and to the Frederickson road including a dump truck and grader.

In conclusion, we hold the district court did not err in pronouncing the scope of the easement to be used for recreational purposes, grazing cattle purposes, and to make improvements on the Beckstead Property. We also hold it is not necessary that the district court order the Becksteads to provide names of everyone that will use the easement to access their property. Finally, we remand the case to the district court for the limited purpose of setting out the width and length of the easement.

## C. Contribution for Maintenance

The Prices counterclaimed for contribution for their maintenance of the roadway. On appeal, the Prices contend the district court erred in failing to consider their contribution claim and that they are entitled to an award of contribution.

The owner of the servient estate does not have a duty to maintain the easement. *Walker v. Boozer*, 140 Idaho 451, 455, 95 P.3d 69, 73 (2004). The owner of the dominant estate has the duty to maintain the easement even when the servient estate landowner uses the easement. *Id.* at 456, 95 P.3d at 74. "That duty requires the easement owner maintain, repair, and protect the easement so as not to create an additional burden on the servient estate or an interference that would damage the land, such as flooding of the servient estate." *Id.* However, the dominant estate owner's duty to maintain does not require the dominant estate "to maintain and repair the easement for the benefit of the servient estate." *Id.* When a servient estate owner seeks contribution they must show the dominant estate owner's maintenance created an additional burden or an interference that would damage the servient estate. *Id.*

> [A]bsent a showing that the easement owners' maintenance of the easement created an additional burden or interference with the servient estate, the servient estate cannot dictate the standard by which the easement should be maintained, expend funds to maintain it to the level desired by the servient estate and then seek reimbursement for those expenditures and contribution for future expenditures from the easement owners.

*Id.*

---

69, 72, 137 P.3d 456, 459 (2006) ("Only the owner of the dominant estate has standing to quiet title to an easement appurtenant to that estate.").

There was evidence presented throughout the trial that the Prices expended money to maintain the road. However, the Prices fail to make any arguments or point the Court to any evidence showing the Becksteads' maintenance or lack thereof created an additional burden or an interference causing damage to the Prices' land. The district court found the Becksteads maintained the road and this is supported by testimony given throughout the trial.[5] Since the Prices fail to show the Becksteads' maintenance of the road created an additional burden or interference with the servient estate causing the Prices to then perform maintenance, we hold the Prices are not entitled to contribution for their maintenance of the road.

**D. Gates**

The Prices argue the district court erred in ordering the Prices to replace their wire gates with metal swing gates, in ordering the locking of the front gate, and in ordering that a certain gate be removed.

This Court has affirmed district court orders preventing the servient estate from constructing or maintaining gates in a way which interferes with or limits the use of the prescriptive easement by the dominant estate. *See Lovitt v. Robideaux*, 139 Idaho 322, 328-29, 78 P.3d 389, 395-96 (2003); *Gibbens*, 98 Idaho at 640, 570 P.2d at 877. In *Gibbens*, this Court held it was proper to impose on the dominant estate owners the expense of constructing and maintaining gates necessary to protect the easement. *Id*. at 640, 570 P.2d at 877. However, *Gibbens* does not require that all expenses associated with gates on the easement be absorbed by the dominant estate owners. Rather, *Gibbens* looked at the specific facts of the case. *See id*. ("It would seem proper in this case to require" the dominant estate to construct and maintain the necessary gates). In *Lovitt*, this Court looked at whether the district court's order preventing the servient estate from limiting the use of the easement by a locked gate was reasonable. 139 Idaho at 328, 78 P.3d at 395. The Court noted the servient estate owner may choose to construct a gate across an easement but "[u]se of a gate, or any other method of regulating an easement, by the owner of the servient estate must, however, be reasonable." *Id*. There, the district court's

---

[5] Thus, the Prices' contention that the Becksteads have not maintained the easement lacks merit. Furthermore, there is no support for the Prices' contention that maintenance of an easement requires the dominant estate owners to insure or pay taxes on the easement. *See Sinnett v. Werelus*, 83 Idaho 514, 520, 365 P.2d 952, 955 (1961) (it is necessary to pay taxes in order to adversely possess land, but paying taxes is not necessary in order to acquire an easement).

11

finding of reasonableness was affirmed when it was supported by substantial and competent evidence. *Id*. at 329, 78 P.3d at 396.

The district court's order includes the following:

> The Court does recognize that the [Prices] do have a right to protect and use their property, and as such the [Prices] may construct those gates which are necessary for the use of the [Prices'] land. However, based on the facts, it is evident that the gate the [Prices] have placed near the gate leading to the Beckstead Property has no purpose but to harass and make it more difficult for the [Becksteads] to access their property. As such the [Prices] [are] hereby ORDERED to remove the gate.

> Furthermore, it is evident that the high tension wire gates with the spikes in the posts that the [Prices] have placed on the road serve no purpose other than to harass and prevent the [Becksteads] from accessing their land and since there has been no showing that a high tension wire gate is better than a metal swing gate, it is ORDERED that these wire gates be removed and metal swing gates be placed in their stead. Also the [Prices] may not lock these gates unless they provide a key to the [Becksteads].

> Finally, in order to prevent access or use of the road by those who are not parties or invitees of the parties, the parties shall at shared expense place a gate at the place where the road leaves the public highway, with a combination lock, which will remain locked at all times. The parties may share the code with their invitees.

Though the order does not specify which party must replace the high tension wire gates with metal swing gates, apparently the Prices understood it was their responsibility to do so and complied with the order. On appeal, the Prices argue they should not have had to bear the expense of replacing the gates. However, the district court based its directive on finding that the Prices' placed the high tension wire gates on the road in order to harass the Becksteads and prevent them from using the easement to access their land. There is substantial and competent evidence to support this finding. Therefore, we hold ordering the Prices to replace the high tension wire gates with swing gates was reasonable.

The Prices contend that the district court's order that "the gate the [Prices] have placed near the gate leading to the Beckstead Property" be removed was based on post-trial facts and thus, was not an issue at trial. Blaine Price acknowledges this gate was constructed just a few days after the trial was completed. The existence of the gate was brought to the district court's attention in the Becksteads' written proposed findings of fact and conclusions of law. This memorandum was filed June 30, 2006, after the Prices filed their proposed findings of fact and conclusions of law. However, the Prices filed supplemental findings of fact and conclusions of

law on July 12, 2006, as well as a written closing argument. Though the Prices address issues surrounding gates, they did not respond to the Becksteads' allegation that they had constructed a new gate after trial. Below, the Prices failed to raise the issue of whether the district court should consider the post-trial allegation that they built a new gate. Therefore, they have waived the right to raise this issue on appeal. *See Combs v. Kelly Logging*, 115 Idaho 695, 698, 769 P.2d 572, 575 (1989) (issues cannot be raised for the first time on appeal).

Finally, the Prices argue the district court erred in ordering that the gate placed where the road leaves the public highway be locked at all times. The Prices assert this order is erroneous because no party asked that those gates be locked at all times and because in the winter it is difficult to open and close the gates and thus, preferable to leave the gate open. The district court's order regarding this gate and that it remained locked does not indicate on which factual findings it is based. There is no evidence in the trial transcript indicating the parties had problems with people using the road that were not invited by either the Prices or the Becksteads. Therefore, we vacate the portion of the order stating that this gate must remain locked at all times.

**E. Due Process**

The Prices assert the easement claimed by the Becksteads is void as an unlawful taking in violation of due process. The Prices argue that because there was a taking, they are entitled to compensation.

The U.S. Constitution provides that private property shall not be taken for public use without just compensation. U.S. Const. amend. V. The Fifth Amendment is made applicable to the states through the Fourteenth Amendment. *Texaco, Inc. v. Short*, 454 U.S. 516, 523, n.11 (1982). The Idaho Constitution provides that "[p]rivate property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor." Idaho Const. art. I, § 14.

The Prices do not assert their property has been taken for public use and the evidence would not support any such assertion. Rather, the Prices quote the Fifth Amendment and state "Defendants contend herein that a private individual has an *even greater right* to be protected by due process from any taking without compensation." There is no support that the acquisition of a private easement as between private parties requires the servient estate owner be compensated, and we do not now adopt any such rule.

The Prices do not make any argument that their due process rights were violated other than by their failure to receive compensation for the easement. Nonetheless, we note that they were afforded an opportunity to be heard in a timely manner. *See Powers v. Canyon County,* 108 Idaho 967, 969, 703 P.2d 1342, 1344 (1985).

**F. Contempt Motion**

The Prices argue the district court's minute entry and order regarding the Becksteads' second contempt motion should be reversed. In September 2006, the Becksteads made a motion to hold the Prices in contempt. At the hearing, the parties stated they had reached a temporary agreement and would pursue mediation. In April 2007, the Becksteads made another contempt motion. In May 2007, the district court entered a minute entry and order stating that it heard testimony on the second motion and that for the time being certain locks were to be removed and that there were to be no rocks or anything else blocking the roadway. The district court then stated that it would go up to the property, view the road, decide whether any gates or fences were to be removed, and render a written decision. It is the May 2007 order mandating that certain locks were to be temporarily removed that the Prices seek to have reversed.

However, in June 2007, the district court entered a subsequent order denying the second motion for contempt. It held that the Becksteads failed to comply with the requirement that their motion for non-summary contempt be supported with an affidavit specifying facts alleging the violations of the court's orders. There is nothing to indicate the May 2007 minute entry and order is still in effect after the district court entered its order ultimately denying the motion. The final order on the Becksteads' April 2007 contempt motion dismissed the motion and, thus, was decided in favor of the Prices. Here, the ultimate order is not adverse to the Prices and, therefore, is not reviewable. *See De Los Santos v. J.R. Simplot Co., Inc.*, 126 Idaho 963, 969, 895 P.2d 564, 570 (1995) (stating this Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error). Additionally, whether the district court erroneously entered the minute entry and order is moot. *See Webb,* 143 Idaho at 524, 148 P.3d at 1270 (noting an issue is moot when a favorable judicial decision would not result in any relief).

Therefore, we decline to consider whether the May 2007 minute entry and order should be reversed.

**G. Attorney Fees on Appeal**

Both the Prices and the Becksteads request an award of attorney fees on appeal pursuant to I.C. § 12-121. That statute allows an award of "reasonable attorney's fees to the prevailing party . . . ." I.C. § 12-121. Attorney fees are awarded to the prevailing party if "the Court determines that the action was brought or pursued frivolously, unreasonably or without foundation." *Baker v. Sullivan*, 132 Idaho 746, 751, 979 P.2d 619, 624 (1999). An award of attorney fees under this statute is appropriate if the appeal simply invites this Court "to second-guess the trial court on conflicting evidence." *Hogg v. Wolske*, 142 Idaho 549, 559, 130 P.3d 1087, 1097 (2006).

Many of the Prices' arguments are without basis and merely invite this Court to second-guess the trial court on conflicting evidence. However, since we remand the case based on the district court's failure to state the dimensions of the easement, the Prices' appeal was not entirely frivolous. Therefore, we decline to award either party attorney fees on appeal.

## IV. CONCLUSION

We affirm the district court's decision that the Becksteads acquired a prescriptive easement and that the scope of that easement is for the purposes of ingress and egress, recreation, grazing cattle, and making improvements to the Beckstead Property. However, we remand the case to the district court for the limited purpose of determining the dimensions of the easement. Additionally, we hold the Prices were not entitled to contribution for their maintenance of the easement. We affirm the district court's order regarding the Prices' removal and replacement of various gates, but we vacate the portion of the order stating the gate to be placed near the highway always remain locked. We further hold the Prices were not denied due process and decline to address the issue regarding the district court's minute entry. Finally, we decline to award either party attorney fees on appeal. Costs to Respondents.

Chief Justice EISMANN and Justices W. JONES, HORTON and KIDWELL, J., pro tem, **CONCUR.**