# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49173

MATTHEW V. LATVALA and
BONNIE A. LATVALA, husband and
wife,

     Plaintiffs-Respondents,

v.

GREEN ENTERPRISES, INC., an Idaho
Corporation; JAMES K. FRANK and
JULIE B. FRANK, husband and wife;
LARIMORE J. CUMMINS and
KATHRYN CUMMINS, husband and
wife; and all unknown persons claiming
an interest in the road by the name of
South Camp Bay Road, located in
Bonner County, Idaho,

     Defendants-Appellants-

and

GILL LIVING TRUST, acting through
TRUSTEE DALE GILL; RUSSELL
W. EDWARDS and JANET M.
EDWARDS, husband and wife; CORAL
MARIE EDWARDS; FRED GRUBB;
CAMP BAY, LLC an Idaho limited
liability company; MARION L. COX,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Coeur d' Alene, September 2022 Term

Opinion Filed: December 8, 2022

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the First Judicial District of the
State of Idaho, Bonner County.  Barbara Buchanan, District Judge.

The district court's second and third amended judgments are <u>affirmed</u>.

John F. Magnuson, Coeur d'Alene, for Appellants. John Magnuson argued.

Sandpoint Law, P.C., Sandpoint, for Respondents. Daniel McLaughlin argued.

_____

1

BEVAN, Chief Justice.

This case concerns the scope of a prescriptive easement. In 2019, the district court granted Respondents Matthew V. and Bonnie A. Latvalas' claim for a prescriptive easement over a road known as "South Camp Bay Road" to reach their property located on the shores of Lake Pend Oreille. Because the prescriptive easement was created by the operations of an active mine, the district court determined that the scope of the easement included the ability to transport labor and materials to build a home on the Latvalas' property. In *Latvala v. Green Enterprises*, Inc., 168 Idaho 686, 485 P.3d 1129 (2021) (*Latvala I*), this Court affirmed the district court's determination that the Latvalas had a prescriptive easement over South Camp Bay Road. However, the Court vacated the district court's judgment after concluding it had impermissibly expanded the scope of that easement. On remand, the parties disputed whether this Court's decision prohibited the Latvalas' proposed residential use of South Camp Bay Road, or only the construction of a residence on the Latvalas' property. The district court entered a second amended judgment that prohibited the Latvalas from using South Camp Bay Road to construct a residence on their property, but did not restrict the Latvalas from using the road for residential purposes. Appellants Green Enterprises, Inc., James K. Frank and Julie B. Frank, and Larimore J. Cummins and Kathryn Cummins (neighboring landowners) timely appealed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts of this case are set forth in *Latvala I*. In 2015, the Latvalas purchased a land-locked parcel of land known as Sulphide South, which was originally part of a patented mining claim on the shores of Lake Pend Oreille. 168 Idaho at 690, 485 P.3d at 1133. The Latvalas planned to use Sulphide South for both personal mineral and residential purposes. *Id*. at 693, 485 P.3d at 1136. To further these interests, the Latvalas wanted to use South Camp Bay Road to transport material and men to build a residence on Sulphide South. *Id*.

In 2017, the Latvalas sued neighboring landowners along South Camp Bay Road in an effort to extend South Camp Bay Road to Sulphide South, including a claim for a prescriptive easement that would allow the Latvalas to use and build on the Latvala property. *Id*. at 694, 485 P.3d at 1137. Following a four-day bench trial in 2019, the district court granted the Latvalas' claim for a prescriptive easement over South Camp Bay Road. *Id*. Because the prescriptive easement was created by the operations of an active mine, the district court determined that the scope of the easement included access to Sulphide South, transport of labor and materials to build

a home, and the construction of an access road across a neighboring parcel of land known as Sulphide North. 168 Idaho at 694, 485 P.3d at 1137. The district court concluded that "it was reasonably foreseeable to the servient landowners that use of South Camp Bay Road might someday change from mining to residential purposes, and that residential structures could be built on the Sulphide Lode Property."

The district court entered a judgment specifying:

> Title is quieted in an easement for ingress, egress, and utilities for the benefit of Sulphide South (also known in this action as the Latvala Property) . . . . This easement is an easement appurtenant. *It may be used for residential purposes*, and includes the right to use, repair, improve, and maintain South Camp Bay Road for vehicular and utility access to Sulphide South, but shall not include the right to physically expand the width of the easement. . . .

(Emphasis added.) The court subsequently entered an amended judgment awarding costs to the Latvalas. The neighboring landowners appealed to this Court, arguing the prescriptive easement granted by the district court constituted an unreasonable expansion in use of any rights that the Latvalas could claim by prescription. *Latvala I*, 168 Idaho at 694, 485 P.3d at 1137.

In *Latvala I*, this Court affirmed the portion of the district court decision granting a prescriptive easement to access Sulphide South via South Camp Bay Road. 168 Idaho at 695–99, 485 P.3d at 1138–42. However, the Court held the district court impermissibly expanded the scope of that prescriptive easement. *Id*. at 699–702, 485 P.3d at 1142–45. This Court focused primarily on disavowing the district court's conclusion that "*building* a residence on Sulphide South was reasonably foreseeable [during the prescriptive period]." *Id*. at 702, 485 P.3d at 1145 (emphasis added). That said, the Court also recognized that "there is no proof in the record that any 'residence' was ever located on Sulphide South for the prescriptive period . . . . No residential, mining, or other purpose has been established for Sulphide South." *Id*. Ultimately, the Court held "where Latvala plans to transport materials and men down South Camp Bay Road for the construction of a road and a home on Sulphide South, such a use diverges from how Sulphide South has been used throughout time – an undeveloped parcel, underneath which a mineshaft exists." *Id*. The Court concluded "using South Camp Bay Road to construct a residence on Sulphide South and a new road across Sulphide North is beyond the scope of the prescriptive easement and, accordingly, [we] reverse that portion of the district court's decision." *Id*.

Following this Court's decision in *Latvala I*, the Latvalas filed a motion for entry of an amended judgment that only restricted the Latvalas from using South Camp Bay Road to construct

a residence on Sulphide South and a road across Sulphide North. The neighboring landowners opposed the motion, arguing that it was inconsistent with this Court's decision, positing the Court also held residential use of Sulphide South was an unreasonable expansion of the prescriptive easement. The neighboring landowners submitted their own amended judgment, which specified South Camp Bay Road "shall not be used to facilitate or enable the use of Sulphide South for residential purposes or for the construction of a new road across Sulphide North." The Latvalas objected to the neighboring landowners proposed judgment, arguing it was overly restrictive.

On August 5, 2021, the parties appeared for a hearing on the Latvalas' motion for entry of amended judgment. The district court recognized that the sole issue was trying to determine the holding of this Court in *Latvala I*. The Latvalas argued this Court's holding was very specific, emphasizing the Court's language strictly construing the "prescriptive easement rights and the burden that would be placed on the servient easements during the *construction* phase of this project." (Emphasis added.) Conversely, the neighboring landowners highlighted this Court's statement that "road development *and* residential use of Sulphide South are unreasonable expansions of the prescriptive easement." (Emphasis added.)

The neighboring landowners also pointed out that the Latvalas had filed a petition for rehearing before this Court, asking for, among other things, "[w]hether the evidence and findings in the record established that the Latvalas' proposed residential use of South Camp Bay Road is not an intensification of use of the prescriptive easement" and "[w]hether the evidence and findings in the record established that the Latvalas' proposed residential use of South Camp Bay Road was reasonably foreseeable." Thus, the neighboring landowners argued the Latvalas understood that the Court's opinion had the effect of precluding residential use of the Latvala property by way of South Camp Bay Road. Though this Court issued a substitute opinion following the Latvalas' petition for rehearing, it did not address the Latvalas' residential claims. *See generally Latvala I*.

Following the hearing, the district court signed and entered a second amended judgment that prohibited the Latvalas from using South Camp Bay Road to construct a residence on Sulphide South, but did not include the additional language the neighboring landowners proposed restricting the Latvalas from using the road "for residential purposes:"

> The Amended Judgment . . . is affirmed and remains in full force in effect as to all Defendants except as expressly amended in part below.
>
> The Amended Judgment is hereby amended in part to provide that the prescriptive easement over that portion of South Camp Bay Road located within

4

the real property owned by [neighboring landowners] shall not be used to construct a residence on Sulphide South . . . or for the construction of the new road across Sulphide North.

Subject to the foregoing construction limitations which apply only to the above referenced portions of South Camp Bay Road located within the [neighboring landowners] property, title is quieted in an easement for ingress, egress and utilities for the benefit of Sulphide South over Sulphide North as well as over South Camp Bay Road, as set forth in the amended judgment.

The neighboring landowners filed a timely notice of appeal.

The district court later, based on a stipulation between the parties, entered a third amended judgment that dismissed the Latvalas' claim for a declaratory ruling that South Camp Bay Road is a public right-of-way. The district court also declined to award costs. The third amended judgment did not otherwise alter the second amended judgment. The neighboring landowners filed a timely amended notice of appeal from the third amended judgment on the same issues identified in their original notice of appeal.

## II. STANDARD OF REVIEW

"A determination that a claimant has established a prescriptive easement involves entwined questions of law and fact." *Latvala I*, 168 Idaho at 699, 485 P.3d at 1142 (citing *Beckstead v. Price*, 146 Idaho 57, 61, 190 P.3d 876, 880 (2008)). But, whether the increased use of the road amounts to an "expansion of the original easement" or merely an "increase in degree of use" is solely a question of law. *Id*. (quoting *Gibbens v. Weisshaupt*, 98 Idaho 633, 638, 570 P.2d 870, 875 (1977)).

## III. ANALYSIS

The discrete issue before this Court is whether the district court's second amended judgment (restated in its third amended judgment) properly reflects this Court's holding in *Latvala I*. Again, the district court's second amended judgment prohibited the Latvalas from using South Camp Bay Road to *construct* a residence on Sulphide South but did not amend language from the first amended judgment that allowed the Latvalas to use the road "for residential purposes." This Court must now determine whether its substitute opinion in *Latvala I* restricted the Latvalas from using South Camp Bay Road for residential purposes.

**A.** **The district court's second and third amended judgments are consistent with this Court's holding in *Latvala I*.**

As a threshold matter, the Latvalas argue that the neighboring landowners are attempting to collaterally attack this Court's substitute opinion by asking the Court to revise the holding therein. The Latvalas contend there is no indication the substitute opinion restricts the easement in

5

the manner suggested by the neighboring landowners, i.e., preventing residential use. The Latvalas suggest the neighboring landowners' efforts to "obtain a modification" of the Court's holding in *Latvala I* are barred by two rules: Idaho Appellate Rule 38 and the "law of the case doctrine."

The relevant portion of Idaho Appellate Rule 38 specifies that opinions become final 21 days after the announcement of a modified opinion without a rehearing. I.A.R. 38(b)(3). The substitute opinion in *Latvala I* was issued on May 3, 2021, and became final May 24, 2021. On the other hand, "[t]he law of the case doctrine, which is well settled in Idaho, requires that when an appellate court, in 'deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal[.]' " *State v. Gorringe*, 168 Idaho 175, 179, 481 P.3d 723, 727 (2021) (quoting *Berrett v. Clark Cnty. Sch. Dist. No. 161*, 165 Idaho 913, 921, 454 P.3d 555, 563 (2019)).

The Latvalas' arguments are without merit. Here, the neighboring landowners are merely seeking an *interpretation* of this Court's substitute opinion, not a modification. Indeed, in their reply brief, the neighboring landowners acknowledge that the Court's substitute opinion is "obviously final" and submit the "[s]ubstitute [o]pinion already includes findings that 'no residential purpose has been established for Sulphide South' and that '[t]here's no support in the record for the view that a residence built in 2015 . . . would have been reasonably foreseeable . . . .' " (Emphasis in original).

The neighboring landowners summarize the issue on appeal as whether the district court erred by awarding the Latvalas a prescriptive easement over South Camp Bay Road that included "residential use" within the easement's scope. The Latvalas counter that the neighboring landowners have "disingenuously" framed the issue, given that the second amended judgment does not contain any reference to residential use, except to the extent the judgment indicates the Latvalas may not use the easement for construction of a residence on Sulphide South. While it is true the second amended judgment does not contain a specific reference to the Latvalas' ability use South Camp Bay Road for residential purposes, it does affirm and incorporate the remaining provisions in the amended judgment "[s]ubject to the . . . construction limitations." The amended judgment plainly held that the prescriptive easement "may be used for residential purposes." Thus, the issues the neighboring landowners have raised on appeal are properly before us.

6

In discussing the scope of the prescriptive easement in *Latvala I*, this Court focused primarily on the increased burden that would be placed on the servient estates during the construction phase of the project:

> "We also diverge from the district court's conclusion that *building* a residence on Sulphide South was reasonably foreseeable in 1946-1954."

> "Ultimately, where Latvala plans to transport materials and men down South Camp Bay Road for the *construction of a road and a home* on Sulphide South, such a use diverges from how Sulphide South has been used throughout time – an undeveloped parcel, underneath which a mineshaft exists."

> "We strictly construe these prescriptive easement rights and the burden that would be placed on the servient estates *during the construction phase* of this project."

> "We hold that using South Camp Bay Road to *construct a residence* on Sulphide South and a new road across Sulphide North is beyond the scope of the prescriptive easement and, accordingly, reverse that portion of the district court's decision."

168 Idaho at 702, 485 P.3d at 1145 (emphasis added).

However, this Court also commented on the "residential use" of Sulphide South independent of the proposed construction. First, the Court summarized the neighboring landowners' prior argument as being that "the road development *and residential use* of Sulphide South are unreasonable expansions of the prescriptive easement," before adding "[w]e agree." *Id*. at 699, 485 P.3d at 1142. Later, the Court discussed:

> [T]here is no proof in the record that any "*residence*" was ever located on Sulphide South for the prescriptive period, and the only structures on Sulphide North were a mill and a tool and dry shed. *No residential, mining, or other purpose has been established for Sulphide South*. As the Appellants put it: "the Latvala property has never been used for anything." The existence of structures on Sulphide North or the planned structures in [an adjacent area in 1947] do not support the logical inference that a residence could be built on Sulphide South roughly sixty-eight years later. *Even if some miners occupied a "camp" at Sulphide South for a time, there is no proof that their habitation was continuous throughout the five-year prescriptive period*. "The right gained by prescription is always confined to the right as exercised for the full period of time required by the statute, which is, in this state, five years." *Loosli v. Heseman*, 66 Idaho 469, 481, 162 P.2d 393, 399 (1945). There is no support in the record for the view that a residence built in 2015 when Latvala purchased this property, would have been reasonably foreseeable to the servient estates between 1946 and 1954.

*Id*. at 702, 485 P.3d at 1145 (emphasis added).

Although the Court never specifically held "residential use is prohibited," the neighboring landowners argue this discussion of residential use was intertwined with its analysis of the construction of a residence on Sulphide South.

Courts closely scrutinize prescriptive easement rights because a prescription is a penalty against a landowner. *Latvala I*, 168 Idaho at 699, 485 P.3d at 1142 (citing *Beckstead*, 146 Idaho at 64, 190 P.3d at 883). "As a general rule, an easement acquired by prescription is confined to the right as exercised during the prescriptive period. . . . While some change of usage is permissible, any changes in the use of a prescriptive easement cannot result in an unreasonably increased burden on the servient estate." *Id*. (quoting *Elder v. Nw. Timber Co*., 101 Idaho 356, 359, 613 P.2d 367, 370 (1980)). Thus, "any changes in the use of a prescriptive easement cannot result in an unreasonabl[y] increased burden on the servient estate and that the increase in use must be reasonably foreseeable at the time the easement is established." *Id*. (quoting *Gibbens*, 98 Idaho at 639, 570 P.2d at 876). "In other words, when examining whether a planned use of a prescriptive easement would impose an unreasonable increased burden, the focus of the inquiry should be on whether it is reasonable to conclude that the owner of the land where the easement is located would have objected to the increased use had it occurred during the prescriptive period." *Id*. at 701, 485 P.3d at 1144.

The Latvalas argue that merely driving over South Camp Bay Road, just as the then owners/lessees of the Sulphide Lode property[1] did during the prescriptive period is neither an increase nor a change of use. The Latvalas allege the subjective intent of the party driving over the road is irrelevant if there is no impact on the servient estate holder when compared to the prescriptive period. In *Latvala I*, this Court recognized that it would have to measure the Latvalas planned use of South Camp Bay Road against the historical usage, which the district court summarized as being

> for ingress and egress to the Sulphide Lode property (Sulphide North and Sulphide
> South) and was used by motor vehicles to transport laborers, hand tools, mining

---

[1] The Latvalas reference the Sulphide Lode property as it existed during the prescriptive period (1946-1954), before the land was split into Sulphide North and Sulphide South in 1982. The neighboring landowners argue that the Latvalas are limited to the historic use of Sulphide South and cannot establish any prescriptive easement rights relating to Sulphide North. However, before 1982, Sulphide South and Sulphide North were one combined parcel; thus, the prescriptive easement applies equally to both. *Beckstead v. Price*, 146 Idaho 57, 65, 190 P.3d 876, 884 (2008) ("An easement appurtenant is attached to a dominant tenement. . . . an easement appurtenant serves the owner of the dominant estate in a way that cannot be separated from his rights in the land.").

equipment (e.g., rails, ore cars, a compressor, and a drifter (rock drill)), and 15 tons of ore.

*Latvala I*, 168 Idaho at 697, 485 P.3d at 1140.

We further recognized that:

With multiple employees, the miners would have travelled to and from the mine regularly, as would supplies from the local towns. In addition, the plethora of tools and equipment necessary to complete this work would have been brought to the sulphide claim property . . . .

*Id*.

Comparing the historical use of South Camp Bay Road during the prescriptive period against the Latvalas' proposed use, the Latvalas allege this Court only found two proposed uses that would exceed the scope of the prescriptive easement: (1) the construction of a road over Sulphide North; and (2) the construction of a residence on Sulphide South. *See Latvala I*, 168 Idaho at 702, 485 P.3d at 1145 ("Thus, we hold that using South Camp Bay Road to construct a residence on Sulphide South and a new road across Sulphide North is beyond the scope of the prescriptive easement and, accordingly, reverse that portion of the district court's decision.").

The Latvalas maintain that if the proposed use is consistent with the use during the prescriptive period, with no increased use or expansion of the roadway, there is no need to determine whether the use is foreseeable. The Latvalas posit that the neighboring landowners would have this Court prohibit the Latvalas from driving over South Camp Bay Road for any purpose other than to actively mine their property, diverting the focus to the Latvalas' subjective intent rather than the impact on the servient estates. In support, the Latvalas cite the following passage from *Gibbens v. Weisshaupt*:

We do not mean to imply from our decision today that any increase in use of a prescriptive easement is an expansion. Our decision is consistent with [§§] 478 and 479 of the Restatement of Property concerning evolution and expansion of easements. Rights obtained by prescription should be strictly limited, and we read these sections of the Restatement narrowly. We are aware that some changes in the character of the dominant estate are foreseeable and will necessitate changes in the use of a prescriptive easement. We however emphasize that any changes in the use of a prescriptive easement cannot result in an unreasonable increased burden on the servient estate and that the increase in use must be reasonably foreseeable at the time the easement is established.

98 Idaho at 639, 570 P.2d at 876.

9

The Court's decision in *Gibbens* is the seminal case addressing the scope of a prescriptive easement and subsequent changes in use. In *Gibbens* there was a dispute between neighboring landowners over the "scope" of a prescriptive easement. *Id.* at 636, 570 P.2d at 873. The "scope" of an easement means the extent of the privilege of use, including the time (e.g., day/night, summer/winter), place (the location of the easement area and the parcel it benefits), manner (e.g., foot traffic, automobile traffic, trucks, recreational vehicles), and purpose of use (e.g., ingress/egress, utilities). *See* Restatement (First) of Property V I 39 Intro. Note (1944) ("Within the scope of the privilege of use are included the elements of time, place, manner, and purpose of use.").

From the early 1930s until about 1970, the owners of the 700-acre parcel in *Gibbens* used a dirt road located on a neighboring 20-acre parcel as a means of ingress and egress for a single-family residence, farm, and cattle operation. 98 Idaho at 635–36, 570 P.2d at 872–73. The Connollys (two of the plaintiffs) purchased the 700-acre parcel in 1967. *Id.* at 636, 570 P.2d at 873. In 1970, they sold ten acres of the parcel to a commercial greenhouse operation that employed 20-30 people, and they eventually sold four other parcels to families who then built homes. *Id.*

In 1973, a dispute over the use of the dirt road came to a head when the Weisshaupts, the owners of the 20-acre parcel, built a fence that limited the width of the dirt road to 12 feet. *Id.* The Connollys, the other homeowners, and the greenhouse operation sued the Weisshaupts (the defendants) to establish the existence of a prescriptive easement across the 20-acre parcel and to prohibit the Weisshaupts from interfering with their use of it. *Id.* After a trial, the district court decided in favor of the Connollys and the other plaintiffs, ruling that an easement for ingress and egress existed and that it was 40 feet in width where the dirt road adjoined another road and 22 feet in width elsewhere. *Id.* The district court held that the increase in road use after the Connollys' sale to the greenhouse operation and the construction of the other family homes was only an "increase in degree of use" and did not constitute an impermissible expansion of the scope of the original prescriptive easement. *Id.* The Weisshaupts appealed. *Id.*

On appeal, this Court, much like the decision in *Latvala I*, affirmed the existence of the prescriptive easement, but reversed the district court's decision concerning scope, holding that the increased traffic caused by the greenhouse operation and the four additional family residences on the 700-acre parcel extended beyond the original use for a single-family residence, farm, and cattle operation. *Id.* at 639, 570 P.2d at 876. This Court quoted favorably from a California case which

10

held that the scope of a prescriptive easement is fixed and determined by the manner of use in which it originated:

> When an easement is acquired by prescription, the extent of the right is fixed and determined by the manner of use in which it originated. An easement acquired by prescription cannot be extended or increased so as to enlarge the burden except by grant or by adverse user which has been acquiesced in for the required statutory time. One who has acquired an easement by prescription or by grant may not use it to impose a substantial increase or change of burden on the servient tenement. The scope of a prescriptive easement is determined by the use through which it is acquired. A person using the land of another for the prescriptive period may acquire the right to continue such use, but does not acquire the right to make other uses of it.

*Id.* at 638, 570 P.2d at 875 (quoting *Bartholomew v. Staheli*, 195 P.2d 824, 828–29 (Cal. Ct. App. 1948) (citations omitted in *Gibbens*)).

This Court in *Gibbens* was also careful to recognize, however, that not every increase in the use of a prescriptive easement is an impermissible expansion and provided a two-part legal test to be used when addressing this issue:

> We do not mean to imply from our decision today that any increase in use of a prescriptive easement is an expansion. Our decision is consistent with §§ 478 and 479 of the Restatement of Property concerning evolution and expansion of easements. Rights obtained by prescription should be strictly limited, and we read these sections of the Restatement narrowly. We are aware that some changes in the character of the dominant estate are foreseeable and will necessitate changes in the use of a prescriptive easement. *We however emphasize that any changes in the use of a prescriptive easement cannot result in an unreasonable increased burden on the servient estate and that the increase in use must be reasonably foreseeable at the time the easement is established.*

*Id.* (emphasis added) (footnote omitted). This Court went on to give an example of a permissible change in use to illustrate its point:

> The respondents Wallace and Eda Connolly purchased the dominant estate in 1967. The respondents leased portions of their property for pasturage and cattle were hauled over the roadway in question. Any increase in use caused by these leasing operations would not be an expansion of the easement, merely a permissible increase in degree of use. The original easement contemplated the operation of a cattle ranch and the further development of this cattle ranch would be foreseeable. Also this additional use would not amount to an unreasonable increased burden because of the infrequency of the trips.

*Id.* at 639, 570 P.2d at 876.

11

The Latvalas claim that simply driving over South Camp Bay Road to reach the Sulphide property is neither an increase nor an expansion of what the owners of the Sulphide Lode property were doing during the prescriptive period. They were, in fact, using South Camp Bay Road for vehicular passage. The Latvalas submit there can be no doubt that the owners of the servient estates would foresee the continued use of South Camp Bay Road for vehicular access to the Sulphide Lode properties regardless of whether the subjective intent of such use was for mining or residential purposes. The Latvalas advance it is only the use of the road to construct a residence or build a road across Sulphide North that would result in an unforeseeable intensification and expansion of that historical use, which have already been prohibited by the substitute opinion in *Latvala I*.

Indeed, we must focus on whether there is an expansion of use that would result in an increased burden on the servient tenements rather than the Latvalas' subjective intent each time they drive over South Camp Bay Road. In reaching this conclusion we note the neighboring landowners' concerns that the Latvalas' proposed "residential use" could expand to include multiple residences that ultimately might be used as rental properties. However, to speculate about what kind of residence the Latvalas might build, or how many people would have access to the property, is premature at this juncture. Unlike the evidence in the record detailing the "veritable parade of semi-trucks and trailers, cement mixers, excavation equipment, and construction materials that might need to travel down South Camp Bay Road to construct . . . a road across Sulphide North," there is no evidence indicating what kind of residential use the Latvalas are intending. Thus, this Court has no way to gauge whether the Latvalas' proposed residential use would result in an increased burden on the servient estates.

In *Latvala I* we held that using South Camp Bay Road to construct a residence on Sulphide South and a new road across Sulphide North is beyond the scope of the prescriptive easement. 168 Idaho at 702, 485 P.3d at 1145. The district court's second and third amended judgments incorporated this holding, specifying:

> The Amended Judgment is hereby amended in part to provide that the prescriptive easement over that portion of South Camp Bay Road located within the real property owned by [neighboring landowners] shall not be used to construct a residence on Sulphide South . . . or for the construction of the new road across Sulphide North.

Because *possibly* driving across South Camp Bay Road will do nothing to increase the burden on the servient landowners, we affirm the district court's second and third amended judgments because they are consistent with our holding in *Latvala I*. The Latvalas may not use South Camp Bay Road to build a residence; they may drive along Camp Bay Road to access a residence. Whether and to what extent that burden may or could change in the future is a question for another day. On the record before us we will not hypothesize on what the outcome would be under those theoretical scenarios.

**B.     We decline to award attorney fees on appeal.**

The Latvalas request an award of attorney fees and costs under Idaho Code section 12-121. Idaho Code section 12-121 provides, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." The Latvalas contend the neighboring landowners are effectively asking this Court to reexamine and reweigh the evidence already considered by the Court in the first appeal in an effort to obtain a different holding. The Latvalas advocate the decision cannot be modified in this manner.

Though we have held the Latvalas prevailed on appeal, we decline to award attorney fees under Idaho Code section 12-121. *Latvala I* did not explicitly declare that residential use was prohibited. Thus, consideration of whether the district court's second amended judgment runs afoul of this Court's decision in *Latvala I* was not unreasonable, without foundation, or frivolous. The neighboring landowners put forth well-reasoned, thoughtful arguments in support of their claims on appeal. Accordingly, we decline to award attorney fees. Costs are awarded to the Latvalas as the prevailing party on appeal.

## IV. CONCLUSION

The district court's second and third amended judgments are affirmed. Costs are awarded to the Latvalas as the prevailing party on appeal.

Justices BRODY, STEGNER, MOELLER, and ZAHN CONCUR.